## Case No. 13,207.

### The SPARKLE.

[7 Ben. 528.] [1]

District Court, E. D. New York. Dec., 1874.

ADMIRALTY—SALE—SETTING ASIDE—INADEQUACY OF PRICE—COLLISION—JURISDICTION—PRACTICE.

1. A libel was filed in August, 1874, by P. against the steamer S., to recover for supplies. On the return of the process, R. appeared as claimant, but did not answer, and a decree was rendered by default, under which the vessel was sold to T. for $1,000, on the 24th of September, and the proceeds were paid to the libellant P., on September 26th. On September 30th, a petition was filed by M., setting up, that he held a mortgage on the S. made by R. to secure certain claims in Virginia and North Carolina; that the vessel had been removed thence, and brought to this state, in order to escape her being taken under the mortgage, and that the proceedings in this suit, and the sale of the vessel, were collusive, and carried on for the same purpose; and that M. had had no knowledge of such proceedings. And the petition prayed that the sale might be set aside, and the decree opened, in order that M. might be allowed to defend, on such terms as might be just. On this petition process issued against the vessel and against P. and R. and T. T. excepted to the jurisdiction of the court to grant the relief prayed for, and answers were also put in on behalf of P., R. and T., denying the charge of collusiveness in the sale and the merits of M.'s claim. On the hearing, evidence was given by M. tending to show the truth of his allegations. The vessel was shown to have been worth from $8,000 to $10,000, at the time of the sale. None of the respondents offered any evidence: Held, that a court of admiralty is a court of equity; and that purchasers of property sold in pursuance of its decrees, submit themselves to its jurisdiction in respect to the property purchased, and take it subject to the power of the court to vacate the sale, where such action is necessary to promote the ends of justice.

[Cited in The Union, 20 Fed. 542.]

2. This power may be called into exercise by petition.

3. A sale will be set aside, where there has been fraud or misconduct in the purchaser, fraudulent negligence or misconduct in any other person connected with the sale, surprise or misapprehension created by the conduct of the purchaser, or by some other person interested in the sale, or by the officer who conducted it.

[Cited in Blackburn v. Selma R. Co., 3 Fed. 699.]

4. On the facts in this case, there was gross inadequacy of price in the sale, and surprise on the petitioner, and also circumstances tending to show that the persons in possession of the vessel combined with the libellant to secure the sale, and tending to raise suspicion as to the action of the purchaser in the premises.

5. The sale therefore must be set aside, on the reimbursement to T. of his purchase money and his outlay in this proceeding; the libellant P. must repay into the registry of the court the money drawn by him under his decree, and the decree must be set aside, and M. allowed to intervene and defend.

[Cited in Blackburn v. Selma R. Co., 3 Fed. 700.]

In admiralty.

---

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

Benedict, Taft & Benedict, for Martin.
Owen & Gray, for Pratt.
N. F. Waring, for Rogers.
H. C. Place, for Tuttle.

BENEDICT, District Judge. This case comes before the court upon a petition filed by one William F. Martin, under circumstances so novel and peculiar that a detailed statement of the proceedings in the cause is necessary to the understanding of the questions of law and of fact now to be determined.

On the 27th of August, 1874, a libel was filed by one Charles H. Pratt, to enforce a lien against the steamship Sparkle for ship chandlery and ship stores, amounting to $790, supplied to that vessel, on or about the 21st of September, 1872, at Norfolk, Virginia. On the same day, process in rem was issued against the said vessel, and the vessel was thereupon seized by the marshal. No notice of seizure was published prior to the return day of the process. On the return of the process in court, Eliza Jane Rogers appeared and claimed the vessel as owner, but no application for time to answer was then applied for, nor was any answer filed. A short order of publication, returnable on the 16th of September, 1874, was then applied for by the libellant and obtained.

On the return of the short order and upon the second call of the process, no other claimant appearing, on motion of the proctors for the libellants, the default of all persons was entered, and the steamship condemned to pay the demands of the libellants, and on like motion a venditioni exponas was then issued, directing the sale of the vessel upon the usual six days' notice.

Such notice of sale was thereupon duly published, and on the 24th of September, the marshal, in obedience to the writ, sold the steamship at auction for the sum of $1,000 to one Jason H. Tuttle.

The proceeds of the sale were paid into court on the 25th of September, and, on the 26th of September, were paid over to the libellant in pursuance of the decree. the amount of his claim and costs, as ascertained, being the sum of $1,035.60.

On the 30th of September, William F. Martin presented to the court his petition setting forth, that on or about the 24th day of October, 1873, Eliza Jane Rogers, Albert Rogers her husband, and A. H. Rogers had conveyed the steamship Sparkle to him by a certain instrument in writing, to secure certain claims therein mentioned then in suit in the courts of Virginia; that the steamship was a vessel enrolled in the port of Norfolk, whose occupation was plying between that port and the waters of North Carolina, in the business of transporting fresh fish; that on the 12th day of July, 1874, judgment had been recovered upon the claims secured by the conveyance to him, for the sum of $12,095; that about the time of the rendition of such judgment. the said Albert Rogers had removed or caused to be removed the said steamship from the waters of Virginia and North Carolina, and brought to the port of New York, where she had been libelled and sold, in the action brought by Charles H. Pratt, as above described. The petitioner further averred that the purchaser of said vessel at said sale was not a bona fide purchaser of the vessel; that the sale and proceedings in the action of Pratt were, to the knowledge of the purchaser. instituted and carried on by collusion with said Rogers and his wife, for the purpose of depriving the petitioner of the right to take possession of the said vessel under his conveyance; that the claim of the libellant Pratt was a fictitious one, and did not constitute any lien on said vessel, and that no lien upon the vessel existed therefor. It was further averred, that the proceedings in the suit of Pratt did not come to the knowledge of the petitioner, until the 28th of September, 1874; wherefore it was prayed, that a process might issue, directing the marshal to seize the said steamship, and give due notice of the proceedings of the petitioner, and that a monition also issue against Jason H. Tuttle, and that he and all other persons interested in the said vessel be cited to appear before the said court at a time and place named, and to answer the allegations of the petition; and that the court would order the sale of the vessel to be set aside, and that the bill of sale given therefor by the marshal be surrendered and canceled; and that the decree entered in favor of Pratt be set aside and vacated, and that the libellant Pratt return into the registry the amount received by him in pursuance of said decree; and that the vessel be remanded to the custody of the marshal. and the petitioner be allowed to come in and defend the said action of Pratt; and for such other relief as the court may grant.

Upon this petition, process in rem and in personam was issued according to the prayer thereof. Upon the return day of this process, Tuttle, the purchaser, appeared by his proctor, and filed exceptions to the jurisdiction of the court to entertain the petition or to grant the relief prayed for therein; also an answer setting up that he was the bona fide purchaser of the vessel; that the proceedings by which she was sold were not instituted or carried on by any collusion between him and any of the other parties; and that he has acted in good faith, without any knowledge or information of the existence of the acts or matters alleged in the petition, and is entitled to have the vessel released and delivered to him as the bona fide purchaser thereof. On the same day Charles H. Pratt appeared in accordance with the citation, and filed his answer to the petition, in which, among other things, he denied any knowledge of the claims of the petitioner as set forth in his petition, and denied that his

action was brought for the purpose of preventing the petitioner from taking the vessel under his conveyance, and denied that the proceedings were instituted and carried on by collusion with said Rogers and his wife, or with any other person for the purpose of avoiding the conveyance to the petitioner, or for any other purpose than for the just and lawful one of enforcing his claim against the said vessel; and he averred that his claim in his original libel set forth was not fictitious, but constituted a valid lien upon said vessel.

Eliza Jane Rogers also filed her answer, setting up that she was the sole and only owner of the steamship Sparkle, at the dates and times in the petition mentioned, and continued such until the sale to Tuttle, by the marshal, under the decree obtained by Charles H. Pratt; that she had no acquaintance with Tuttle, nor did she ever see him to her knowledge, nor was the sale to him made or carried on by any collusion with him for any purpose whatever.

The cause thereafter came on to be heard upon the petition. exceptions, and answers. and the proofs offered by the petitioner in support of his petition; the other parties being duly represented, but not introducing any evidence.

Of the questions discussed by the respective advocates, the first to be disposed of is that raised by the exception filed by Tuttle. In disposing of this question, the allegations of the petitioner must be taken as true; and the question to be determined, therefore, is, whether a court of admiralty has the power, upon a petition, to set aside a sale made in a proceeding in rem, where the proceedings had been regularly conducted, the vessel sold, and the proceeds distributed, but where it appeared that the proceedings were collusive and fraudulent—taken for the purpose of cutting off the interest of a third party in the vessel, and to which fraud the purchaser and the libellant. as well as the owner of the vessel, were parties.

Upon such a question there is no room for doubt. The power of a court of admiralty is as full as that of any other court over its decrees. As in a court of equity, so in the admiralty. purchasers at sales made in pursuance of its decrees thereby submit themselves to its jurisdiction in respect to the property purchased, and take the property so sold subject to the power of the court to vacate the sale, where such action is necessary to promote the ends of justice. This power may be called into exercise as well by petition as by any other form of proceeding, and no difficulty is discovered in granting the necessary relief in such cases arising out of the form of proceedings in the admiralty. The process in rem of the admiralty, when it can be executed, brings the thing itself before the court, to abide the adjudication of the court, and enables the court to be informed, in the most authentic manner, whether any, and if so

what, new parties have become interested in the vessel. Thus, in the present case, this steamship, by means of the process in rem, is now in custody of the marshal, subject to the orders of the court; and as, after such seizure and due advertisement, no new parties have appeared to make any objection to her resale, save only Tuttle. the purchaser at the sale already had, and the claimant Eliza Jane Rogers, the court can know that those interested in the questions involved are before the court. The court having, therefore, the power to entertain the prayer of this petition, and being enabled to do so without adjudicating upon any rights, except the rights of those who became parties to the action before the sale, and Tuttle, who submitted himself to the jurisdiction of the court by becoming the purchaser at that sale, and who has duly appeared in this proceeding, it becomes the clear duty of the court, upon such facts as are by this exception admitted, to determine the question thus presented, and grant the relief prayed for, if the evidence shall sustain the allegations of the petitioner.

In support of this view, reference may be had to Betts Adm. 100; Clerke, Praxis Adm.; Campbell v. Gardner, 3 Stockt. Ch. [11 N. J. Eq.] 426.

I have no hesitation. therefore, in overruling the exceptions filed in this cause, and thus am brought to consider the evidence which has been adduced to support the petition.

And first, I remark that I cannot agree to the position taken by the claimant Tuttle, that his purchase must stand, unless some fraud, collusion, or misconduct on his part is proved.

A court of admiralty is a court of equity, and the considerations which are deemed controlling in similar cases, when they arise in courts of equity. are equally controlling in a court of admiralty. The general rule of equity is declared to be, that a sale will be set aside where there has been fraud or misconduct in the purchaser—fraudulent negligence or misconduct in any other person connected with the sale—surprise or misapprehension created by the conduct of the purchaser. or by some other person interested in the sale. or by the officer who conducts it. Lefevre v. Laraway, 22 Barb. 177.

In Brown v. Frost, 10 Paige, 244, where no fraud, collusion, or misconduct on the part of the purchaser was shown, a sale was set aside, because a party interested, who had intended to bid, was prevented from being present by mistake or accident.

In Billington v. Forbes, 10 Paige, 487, where illness prevented a mortgagor from attending the sale, it was set aside, because a co-defendant sought to take an unconscionable advantage of his absence. Mere inadequacy of price has not been deemed sufficient to justify setting aside a sale, unless the price is so grossly inadequate that, from such inadequacy, the court can infer fraud. Where fraud can be thus inferred, the sale will be

set aside. Eberhart v. Gilchrist, 3 Stockt. Ch. [11 N. J. Eq.] 167. In Griffith v. Hadley, 10 Bosw. 587, a sale to an innocent and bona fide purchaser was set aside, where, from the circumstances, the court could infer, that, through surprise on the part of a person interested, the property was sold at a great sacrifice, although the purchaser had in no way contributed to the surprise. In Bixby v. Meade, 18 Wend. 611, a sale was set aside where property, worth a thousand dollars, was bid off by a relative for $26, and the failure of the party to attend arose from the forgetfulness of an agent to be present as directed. In King v. Morris, 2 Abb. Prac. 298, it is held that such an inadequacy as would amount to fraud will warrant a resale; and great inadequacy, with circumstances of excusable neglect, will have the same effect.

Fraud is not the only ground on which to base an application upon motion to set aside a sale. Campbell v. Gardner, 3 Stockt. Ch. [11 N. J. Eq.] 423. In Lansing v. McPherson, 3 Johns. Ch. 424, it is said that the control which a plaintiff has over the proceedings, down to the sale inclusive, should induce the courts closely to scrutinize his connection with it.

The rule in England appears to be to set aside the sale, where the price bid is so inadequate that it would be against conscience to permit the purchaser to derive such advantage from the neglect of the parties interested.

It is not necessary, therefore, to determine, from the evidence in this cause, that fraud or collusion on the part of this purchaser has been shown. It is sufficient if there has been such a surprise, and a sale at such an inadequate price as that it would be against conscience to allow the purchaser to retain the property against the rights of innocent parties. Looking, then, to the evidence, while it cannot be said that all the allegations of the petition have been proved, a clear case of surprise is shown. The petitioner was in Virginia; he had no reason to suppose that the vessel was to be removed beyond his reach, nor any reason to suppose that she was liable to seizure and sale, for his conveyance contained an express covenant that the vessel was free from liens. Nothing occurred to give him notice of the proceedings taken by Pratt, until he found the vessel in this port in the hands of Tuttle, as purchaser at the marshal's sale.

A gross inadequacy of price is also shown. The evidence is that the vessel was worth from $8,000 to $10,000, and she was sold for $1,000. To permit such a sale to stand would be to permit Tuttle to take an unconscionable advantage of the ignorance of the petitioner in respect to the pendency of any proceedings against this vessel.

These two facts alone are sufficient to warrant setting aside the sale upon such terms as shall make the purchaser whole for his purchase money, costs and expenses. But there are circumstances in this case which go to show that the persons in possession of this vessel combined with the libellant to secure her sale under the decree of this court. It is shown that the vessel came to New York, away from her ordinary route and occupation, where she would shortly be liable to be taken possession of by the petitioner, under his conveyance; and the fact is left without explanation, when explanation was easy if there be any good reason for the removal. It is quite manifest that the person who filed the libel, and those who had possession of the vessel, were in communication before the libel was filed; that the libellant derived his knowledge of the presence of the vessel from those in possession of her, and that some unexplained reason existed which made it desirable, as well to the libellant as to those in possession, to make the proceedings as inexpensive as possible.

The claim of the libellant was, upon the face of his libel, at least doubtful. It bore no proportion to the value of the vessel, and yet those in possession, and who were fully cognizant of the proceedings, allowed a decree to be entered by default, which apparently entailed upon them a serious loss, and offer no explanation of their failure to defend the action. These parties were, moreover, present at the sale, which, ruinous as it apparently was, they made no effort to prevent. Notwithstanding the fact that, in appearance, the sale, if allowed to stand, would entail a large loss upon the owner, no objection to it is now made by the owner; on the contrary, the effort of the petitioner to avoid the sale is opposed by the owner. The fact towards which these circumstances strongly point is sufficient to remove all doubt as to the propriety of an interference, by the court, to prevent the injustice which would result if this sale were allowed to stand.

In addition it must be said, that, while it is true that Tuttle, the buyer, testifies, in the most explicit manner, that he is a bona fide purchaser, having no sort of connection with any of the other parties to this proceeding, still there are facts in the case calculated to raise suspicion in respect to his action in the premises. Certainly he can have no cause of complaint, provided he be made whole for his outlay by reason of his purchase and these proceedings. The fact that an undue profit would accrue to the purchaser at a judicial sale is no reason for refusing to set aside such sale, when justice demands it.

Of course, the other parties to this proceeding can have no cause to complain if the sale be set aside, inasmuch as benefit, rather than loss, will accrue to them by granting the prayer of the petition.

In accordance with these views, the sale in question will be set aside, upon the reimbursement of the purchaser for his outlay by reason thereof and of this proceeding.

The decree rendered in favor of the libel-

lant Pratt will also be set aside, and the petitioner permitted to intervene and contest the demand, and the libellant will be directed to repay into the registry the sum withdrawn therefrom by him, in pursuance of such decree, less the taxed costs; which he is allowed to retain. His costs of this proceeding must abide the event of his action.

The form of the order to be entered, in pursuance of this decision, will be left to be determined, after hearing the parties, upon the settlement thereof.