**Alfred J. GHEZZI, Jr., Appellant,**

v.

**FOSS LAUNCH AND TUG COMPANY, Appellee.**

No. 18428.

United States Court of Appeals
Ninth Circuit.

July 23, 1963.

Helsell, Paul, Fetterman, Todd & Hokanson, William A. Helsell, Seattle, Wash., for appellant.

Broz, Long & Mikkelborg, Jacob A. Mikkelborg, Seattle, Wash., for appellee.

Before JERTBERG and BROWNING, Circuit Judges, and JAMESON, District Judge.

JERTBERG, Circuit Judge.

Before us are appeals from orders of the District Court; one order confirmed sale of the tug RICHARD, the other order denied appellant's motion for reconsideration of the order confirming sale.

Jurisdiction in the District Court is based on Article III, Section 2 of the United States Constitution, and 28 U.S.C. § 1333. Jurisdiction in this Court is conferred by the provisions of 28 U.S.C. §§ 1291–1294.

The Admiralty suit commenced with the filing on July 12, 1962 of a libel in rem by the Port of Seattle against the tug RICHARD, and the Barge AFL 1598, and a libel in personam against Ghezzi Towing Co., Inc. The libel in rem sought to enforce liens for "dockage, wharfage and other services" against both vessels.

The tug RICHARD was seized by the United States Marshal on August 30, 1962. On July 17, 1962, a notice of preferred mortgage was endorsed on the tug RICHARD's documents to secure a demand note in favor of First National Bank of Fairbanks, Alaska (hereinafter referred to as the Bank), which note was signed and delivered by the appellant, the owner of the tug RICHARD.

After the initial libel was filed, and pursuant to orders allowing the filing of intervening libels, parties asserting maritime liens against both vessels filed libels in intervention. The aggregate amount claimed to constitute liens against the tug RICHARD is the sum of $96,619.01. The Bank sought foreclosure of its mortgage on the tug RICHARD, and seeks judgment against the appellant. With the exception of the Bank whose libel was filed on October 23, 1962, none of the intervening libellants seek to hold appellant personally for the amount claimed. Each seeks judgment in personam against Ghezzi Towing Co., Inc. The proctors for the Bank are the same proctors as the proctors for the Port of Seattle, the original libellant. The lien of the preferred ship mortgage of the Bank admittedly, and on its face, is clearly junior to the liens asserted by other intervening libellants against the tug RICHARD.

On October 2, 1962, proctors for the Port of Seattle moved for an order directing the sale of both the tug RICHARD, and the Barge. On October 23, 1962, an order of sale as to both vessels was entered, which order was amended on November 14, 1962. The order of sale provided for a Marshal's public sale of both vessels on November 15, 1962. The Marshal's sale was regular in all respects. The notice of the sale was duly and regularly advertised by the Marshal. Advertisements of the sale appeared in a number of newspapers published at vari-

ous places on the Pacific Coast. The sale was well attended by persons who usually attend such sales. Among those present were representatives of the Bank and the appellant's then attorneys. The proctors for the Bank bid the sum of $40,-000.00. The tug was sold to appellee, who was the high bidder in the amount of $41,000.00.

After the sale of November 15, 1962, proctors for the Port of Seattle moved for and obtained confirmation of the sale of the Barge. At the time of the presentation of the order confirming the sale of the Barge on November 26, 1962, the proctors for the Port of Seattle and the Bank advised all parties concerned that they would not move for confirmation of the sale of the tug RICHARD.

Appellant, as owner of the tug RICH-ARD, attempted to find another bidder who would submit an increased bid prior to confirmation, and persuaded a Mr. Chris Palzer, the successful bidder for the Barge, to submit an upset bid of $50,000.00 for the tug RICHARD. Mr. Palzer deposited a certified check for $5,000.00 with the United States Marshal to guarantee that such a bid would be made in the event of resale. This upset bid was submitted on December 5, 1962. On December 5, 1962 appellant filed objections to confirmation of the sale of the tug RICHARD.

After submission of Mr. Palzer's upset bid of $50,000.00, a motion was made on December 11, 1962 to confirm the sale of the tug RICHARD by proctors for Lake Union Drydock Company, an intervening libellant, and the motion was noticed for hearing on December 17, 1962, at the same time as the previously filed objections by appellant to confirmation had been noted for hearing.[1]

The objections of appellant were controverted by appellee which also moved for confirmation of the sale.

On Monday, December 17, 1962 a hearing was held on the motion to confirm the sale. No testimony was taken at this hearing. None was offered. The District Court expressed some dissatisfaction over the delay in filing the motion for confirmation. The then counsel for appellant called the Court's attention to the filing on December 5, 1962 of the upset bid submitted by Mr. Palzer. In the course of the discussion, the then counsel for appellant stated that in connection with Mr. Palzer's upset bid, he was prepared to pay appellee interest on its money from the time of the deposit, additional costs of resale and the cost of moorage and insurance. In reply to questions of the Court as to why the appellant or Mr. Palzer had not bid at the sale held on November 15, 1962, counsel replied that neither one was financially able to do so at that time. The District Court stated that the policy of maintaining stability of judicial sales should be observed and ordered the sale of the tug to appellee on November 15, 1962, confirmed. Those in attendance at the hearing included proctors for the Bank and proctors for the appellant. The order confirming the sale was signed and entered on December 17, 1962.[2]

No objection was raised by any party in respect to notice or timeliness of the hearing on the motion for confirmation.

1. The newly adopted Local Rule 8 of the Local Rules, Western District, Washington, (effective October 1, 1962), provides:
"Rule 8. Motion Days (Revision)
"(b) When there has been an adverse appearance a written notice of motion shall be necessary, unless otherwise provided by rule or court order. Such notice of motion shall be served upon the adverse party, or his attorney, at such time before the hearing as is provided for in Rule 6(d) of the Federal Rules of Civil Procedure unless the Court or one of the Judges thereof shall, for good cause, by special order, prescribe a shorter time. Such motion will be heard, unless the Court otherwise directs, on the second Monday after the notice of such motion is filed."

2. Rule 25, Local Rules of the Western District of Washington provides for a fifteen day delay after the announcement of decision by the Court and prior to the entry of "any judgment or order which requires settlement and approval as to form by the Judge * * *." This rule was applicable to Admiralty proceedings.

Waiver of notice of presentation of the order was signed by all parties through their proctors except the proctor for appellant.

Following the entry of the order the United States Marshal released the tug RICHARD to the appellee, who secured physical possession of the same on December 19, 1962.

On the 19th day of December, 1962 the appellant, through his substituted and present counsel, filed a motion for reconsideration of the order confirming sale of December 17, 1962, and for a stay of delivery of the Marshal's bill of sale to appellee. The Court declined to formally stay the delivery of the bill of sale but suggested to the Marshal, who was present in Court, that the bill of sale be retained by him until the Court had ruled on the motion to reconsider. On December 19, 1962 a firm upset bid of $70,000.00 for the tug RICHARD was submitted by the Bank, accompanied by cashier's check payable to the order of the United States Marshal in the full amount of the bid. The Bank guaranteed to bid $70,000.00 for the vessel in event of resale and deposited the full amount as security for that guarantee. In addition the Bank offered to reimburse appellee by payment to it of interest at the rate of 6% per annum on funds deposited by it with the United States Marshal, if resale should be ordered. Upon the filing of appellant's motion for reconsideration and the submission of the upset bid by the Bank, the District Court ordered a hearing to be held on December 28, 1962 to inquire into the circumstances surrounding the sale. The United States Marshal continued to withhold delivery of the bill of sale to the appellee and delivery of the bill of sale is now stayed by the order of the District Court and by the supersedeas bond filed by appellant on this appeal.

At the hearing held on December 28, 1962 testimony of some length was given. At that hearing, for the first time in the proceedings, testimony as to the fair market value of the tug RICHARD was given by one witness whose qualifications as a maritime appraiser were not questioned and who expressed the opinion that the tug had a fair cash market value of $85,000.00.

Other testimony related to the misunderstanding which occurred between the proctors for the Bank and the officials of the Bank arising out of a long distance telephone conversation as to the amount which the proctors were authorized to bid on behalf of the Bank, at the sale of the tug. As a result of that telephone conversation, the Bank believed that the proctors were instructed to bid at least up to the mortgage balance of $67,500.00, and the proctors believed that their authority to bid was limited to $40,000.00.

Other testimony at the hearing indicated that some delay in filing the motion for confirmation of the sale was caused by the fact that after the sale the proctors for the Port of Seattle discovered that they might experience some difficulty in establishing that the Port of Seattle held a lien against the tug RICHARD, and therefore they did not move for confirmation of the sale of the tug RICHARD. It was not until December 11, 1962 that the proctors for one of the intervening libellants moved for the confirmation of the sale, the hearing on which motion was held on December 17, 1962.

The United States Marshal testified as to the regularity of the sale and stated that in his twenty-one year's experience in conducting sales in the Western District of Washington, that in only one instance had a sale been upset by an upset bid submitted prior to confirmation, and that no sale had been upset by an upset bid filed after confirmation.

While peripheral questions are presented in the briefs, we deem it unnecessary to mention or pass upon them in this opinion, but will confine our discussion to the basic issues as to whether in the light of all of the facts and circumstances disclosed by the record, the orders appealed from, or either of them, should be set aside.

We will first consider the appeal from the order confirming the sale. Appellant states in his opening brief, "The Marshal's Sale which occurred on November 15, 1962, was regular in all respects." There is nothing in the record to suggest fraud, collusion, impropriety or irregularity of any kind. The appellee was in all respects an innocent purchaser. Appellant had full knowledge of the sale, his proctor was present at the sale and appellant was nearby. As above noted, the sale had been widely advertised, and a substantial number of prospective bidders attended the sale. The only matter having any significance to the problem which was brought to the Court's attention was the fact of the filing on December 5, 1962 of Mr. Palzer's upset bid of $50,000.00, which was $9,000.00 in excess of the highest bid made at the sale. No testimony was offered by appellant at that hearing on the subject of the fair market value of the tug. The Court could properly infer from the matters before it that the fair market value of the tug was anywhere from $41,000.00 to $50,000.00.

Did the District Court abuse its discretion in confirming the sale? The principles which should govern the action of the District Court in passing upon a motion to confirm a sale in Admiralty are set forth in a quotation from Corpus Juris Secundum, called to our attention in appellant's opening brief, as follows:

"Until confirmation, a sale in an admiralty proceeding may be set aside at any time. [The New Hampshire, (D.C.Mich.) 18 F.Cas.No. 10,160]. The power of an admiralty court to set aside a sale comes from its general power over its decree, [The Sparkle, (D.C.N.Y.) 22 F.Cas. No. 13,207, 7 Ben. 528] but great caution should be exercised in disposing of motions to set aside sales duly made under the provisions of a decree of the admiralty court. [Lambert's Point Towboat Co. v. United States, (Va.) 182 F. 388, 104 C.C.A. 598]. A sale may be set aside on a showing of fraud, [The Garland, (D.C.Mich.) 16 F. 283; The Sparkle, supra] whether of the purchaser, or of the officer who conducted the sale, or of any other person connected with it, [The Sparkle, supra] collusion, [The Garland, supra] *or for the inadequacy of price,* [The Bella, (D.C.N.J.) 270 F. 287; 1 C.J. p. 1344 note 24] *provided the inadequacy is gross,* [The Planter, (D.C.S.C.) 163 F. 667] *and is such as amounts to either fraud or unfairness.*" [Lambert's Point Towboat Co. v. United States, supra.] (Emphasis added.)

2 C.J.S. Admiralty § 168 f, p. 292.

There is no evidence of misconduct or fraud in conducting the sale. While we might well conclude that the increase in bid would have justified the trial court in reopening the sale, we cannot say as a matter of law that the price was so grossly inadequate that this fact in itself constituted an abuse of discretion on the part of the trial court.[3] It does appear, however, that there may have been some misunderstanding of the facts when the order of confirmation was entered and that these facts were clarified in the subsequent hearing. As noted supra, no evidence was offered at the hearing on the motion to confirm the sale. The court said, inter alia, "if there was any question about the sale, I wouldn't have any hesitancy but the only thing we have here is that someone held back for some reason." The misunderstanding between the officers and proctors for the bank with respect to the initial bid authority was first presented at

---

3. It is a common practice in many states, by statute or otherwise, to open a sale and receive new bids upon the guarantee of an advance of 10%, but this practice has not prevailed in the federal courts. Morrison v. Burnette, 154 F. 617 (8th Cir., 1907). Probate sales under Washington law are upset upon a receipt of an advance bid before confirmation which exceeds the previous high bid by 10%. R.C.W. § 11.56.110. This rule, however, is not applicable to admiralty sales.

the hearing on appellant's motion for reconsideration.

At the hearing on the order of confirmation, the court said further: "There are things in the sale that look strange. It looked like a conflict of interest so far as counsel is concerned. There are some things in there that don't look good to me but there is no fraud or anything like that. I think there is a possible conflict of interest." The proctor for appellant assumed that the court had reference to a conflict of interest between appellant and Palzer, who had made the upset bid. It subsequently developed, however, that the court had reference to the same counsel representing the original libellant and the Bank. This misunderstanding also was subsequently clarified. It cannot of course be determined from any evidence in the case whether the proctor's erroneous assumption that the court had intimated he was acting improperly had any effect upon his failure to clarify the facts surrounding the initial bid or otherwise affected his representation of appellant at the hearing.

█ We shall now consider the appeal from the order of the District Court denying reconsideration of the order of confirmation. At the hearing held on December 28, 1962 there were two significant matters before the Court on that occasion which were not before the Court at the hearing held on December 17, 1962. The first was the testimony of the maritime appraiser that the tug had a fair cash market value of $85,000.00, an amount in excess of 100% of the successful bid at the sale in the amount of $41,-000.00. The second matter was the upset bid of $70,000.00 filed by the Bank on December 19, 1962, more than 75% in excess of the highest bid at the sale.

We find nothing in the record to suggest that appellant was playing "fast and loose" with the Court, acting collusively with the Bank or Mr. Palzer, or attempting to abuse the process of the Court in his efforts to secure the filing of a higher upset bid. Appellant was doing only what comes naturally to a distressed debtor who believes that his property has been sold at a grossly inadequate price. No responsibility for the delay between date of sale and the date of order of confirmation can properly be charged to appellant.

It is clear from the hearing held on December 20, 1962 when the Court was considering the fixing of a date for a hearing on appellant's motion for reconsideration, and was aware of the filing of the upset bid of $70,000.00 by the Bank, that the conscience of the District Court was disturbed. At that hearing the District Court, among other things, stated:

"Well, I have reviewed this carefully and it presents a difficult problem. It is my view that had this showing been made or had this offer been made prior to this, or on Monday of this week when this matter was noted and objections were noted, and prior to confirmation, that the Court would have then been inclined to order resale. I think, certainly, the amount is very substantial, the difference between $41,000 and $70,-000 is very substantial. It might be termed grossly inadequate. However, the matter was before the Court after a considerable delay for confirmation and the record would indicate here that all parties were aware of the sale and, certainly Mr. Ghezzi must have been aware of this sale and a very substantial time has intervened, and Mr. Aiken (formerly proctor for appellant) appeared on behalf of Mr. Ghezzi. He, I assume, had authority to appear for him. Mr. Ghezzi knew at that time what the circumstances were. * * *.

"Having reviewed it and thought a great deal about it since yesterday, I would be inclined to think— now, of course, you can't say what you would do under a given situation but I would say, had this thing come in last week when the Palzer bid came in of $50,000, which was $9,-000—if this had come in at $70,000, then I think I would have been inclined to order a resale and not con-

firm. That is a very substantial amount. $9,000 isn't. I don't mean to say it isn't substantial but it is a very different figure. * * *."

We are likewise disturbed. While we know that appellant may suffer a substantial loss if a resale is not ordered, we are not informed as to the prejudice which may result to the appellee in case a resale is ordered.

We also note in the briefs that each party questions whether the other party had standing in the District Court or has standing in this Court a question which was not presented to or passed upon by the District Court. On remand this question can be explored.

We believe from all of the facts and circumstances in the record that, at a minimum, the interest of justice requires a reconsideration by the District Court of appellant's motion to reconsider the order confirming the sale to appellee.

The orders appealed from are vacated and set aside and the cause is remanded to the District Court for reconsideration and redetermination.

Each party shall bear his own costs on appeal.

BROWNING, Circuit Judge (concurring).

The motion to confirm should have been denied. No prejudice could have resulted to the high bidder at the judicial sale except to deny him the benefit of an unconscionable bargain. As a result of the confirmation, creditors remained unsatisfied, and the debtor was left with a substantial deficiency.

The sale was confirmed on the ground that upsetting a tentative sale on the basis of an increase in price of the magnitude involved here would discourage participation in judicial sales. There is nothing to indicate that this is so. The upset bid exceeded the proposed sales price by more than twenty per cent. Judicial sales of property in state court proceedings are not noticeably impeded by statutory provisions requiring that such sales be upset as a matter of course upon the receipt before confirmation of a bid exceeding the previous high bid by ten per cent. See, e. g., Ore.Rev.Stat. § 116.810; Cal.Prob.Code §§ 756.5, 785; Cal.Code Civ.Proc. § 784; Mont.Rev. Codes Ann. § 91–3016; Rev.Codes Wash. § 11.56.110.