**MUNRO DRYDOCK, INCORPORATED,
Plaintiff, Appellee,**

v.

**M/V HERON, her engines, equipment, and tackle, apparel, furniture and Associated Marine Services, Inc., Defendants, Appellees,**

**United States of America, Appellant.**

**No. 78–1404.**

United States Court of Appeals,
First Circuit.

Argued Sept. 20, 1978.
Decided Sept. 29, 1978.

Emmett B. Lewis, Atty., Civ. Div., Dept. of Justice, Washington, D. C., with whom William Kanter, Atty., Civ. Div., Dept. of Justice, Washington, D. C., was on motion for summary reversal or in the alternative for a stay pending appeal and memorandum in support thereof.

Peter J. Needham, Boston, Mass., for appellee in opposition thereto.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On Tuesday, September 12, 1978, per order of the district court sitting in admiralty, the M/V Heron was put up for sale at a public auction. More than one person bid at the sale, at which the highest bid was $7,500. Prior to the sale a court-appointed appraiser appraised the vessel at $25,000 for scrap purposes and $100,000 for use as a drill ship. The following day, the United States, a preferred ship mortgagee who is owed $113,331.00,* moved for a one-week extension of the confirmation hearing, then scheduled for Friday, September 15. The Government claimed that the sale price was grossly inadequate and that within a week's time it would be able to present the court with an "upset" bid in excess of $25,000.

At the hearing on September 15, the district court summarily denied the motion for an extension and confirmed the sale. The United States immediately appealed these orders and requested the district court for a stay pending appeal. The request for a stay was denied. On Tuesday, September 19, the Government sought an emergency stay in this court because it had been informed that the buyer had begun taking the boat apart to sell as scrap. A judge of this court granted the stay for twenty-four hours and, after a hearing on Wednesday, the twentieth, extended the stay. At the hearing on the stay, it was represented by the Government that a party who did not attend the judicial sale, having now inspected the vessel, had made a firm offer of $50,000 for it. That such an offer existed was, in essence, also confirmed by the $7,500 bidder who intimated at the stay hearing that he currently held a deposit of $5,000 from the proposed new purchaser binding a private agreement to sell the vessel for $50,000 to said purchaser. The upset bidder purportedly did not submit a bid at the auction because he did not develop a need for a vessel of this type until the last minute; there is no suggestion that the bid was deliberately withheld for ulterior reasons.

Prior to confirmation, a bidder at a judicial sale enjoys no contractual right to consummate the deal. *In re Gil-Bern Industries, Inc.*, 526 F.2d 627, 628 (1st Cir. 1975). He is "not a purchaser, but merely an offerer to the court, which accepts his bid only by the confirming order." *The East Hampton*, 48 F.2d 542, 544 (2nd Cir. 1931); *Century Motor Truck Co. v. Noyes*, 18 F.2d 546, 547 (1st Cir. 1927). The policy of inspiring confidence in sales under the supervision of the court favors confirmation of a sale made to the highest bidder at a fairly conducted public auction. But this policy must be weighed against the purpose to be achieved by these judicial sales, which is to benefit the creditors and debtor. *See Gil-Bern, supra*, 526 F.2d at 629; *Ghezzi v. Foss*

---

* There are, in addition, other creditors with, apparently, a lesser priority.

*Launch & Tug Co.,* 321 F.2d 421, 427 (9th Cir. 1963) (Brown, J., concurring opinion); *East Hampton, supra.* To this end, a creditor is entitled to raise a claim prior to confirmation that the sale should be disapproved because the sale price is "grossly inadequate." *See Ghezzi, supra,* 321 F.2d at 421–27; *American Tramp Shipping & Development Corp. v. Coal Export Corp.,* 276 F.2d 570 (4th Cir. 1960).

In the not dissimilar context of bankruptcy sales, gross inadequacy is said to exist when—apart from situations involving fraud or unfairness, which is not the case here—there is a substantial disparity between the highest bid and the appraised or fair market value, and "there is a reasonable degree of probability that a substantially better price will be obtained by a resale . . . ." 4B *Collier On Bankruptcy* ¶ 70.-98[17] at 1192 (14th ed. 1978); *Reid v. King,* 157 F.2d 868, 870–71 (4th Cir. 1946). Under this standard, the district court should not have proceeded to confirm the sale without acquiescing in at least a brief extension for the purpose of ascertaining whether it was probable that the vessel could be sold for the substantially higher price represented by the Government. The value assigned to the vessel for scrap purposes by the court's appraiser was three times that which was offered by the highest bidder, who intended to sell it as scrap. As a drilling ship, the appraised market value was thirteen times greater than the highest bid. The Government represented that, subject to an inspection currently underway, it had a likely upset bid in excess of $25,000. Thus, there was a substantial disparity both between the appraisal and the sale price, and between the likely upset bid and sale price.

Admiralty precedent, although not quite so specific, suggests a similar concept of gross inadequacy. In *Ghezzi v. Foss Launch & Tug Co.,* 321 F.2d 421 (9th Cir. 1963), when the district court had been faced with a $41,000 bid, no evidence concerning fair market value, and an upset bid of $50,000, the circuit court found that the district court had not abused its discretion by confirming the bid of $41,000. "While we might well conclude that the increase in

bid would have justified the trial court in reopening the sale, we cannot say as a matter of law that the price was so grossly inadequate that this fact in itself constituted an abuse of discretion on the part of the trial court." *Id.* at 425. At a hearing for reconsideration, however, the district court was presented with an upset bid of $70,000 (and evidence that the bid would have been presented earlier but for a misunderstanding) and testimony by an expert appraiser that the fair market value was $85,000. The circuit court, noting that the appraised value was an amount in excess of 100% of the successful sale bid, and the upset bid an amount in excess of 75% thereof, held that "at a minimum, the interest of justice requires a reconsideration by the District Court of [the] appellant's motion to reconsider . . . ." *Id.* at 427. Judge (now Chief Judge) Browning would have gone further and directed a resale.

In *American Tramp Shipping & Development Corp. v. Coal Export Corp.,* 276 F.2d at 571, the circuit court affirmed the district court's denial of confirmation when an upset bid ($115,000) 50% in excess of the highest auction bid ($75,000) was received. "While we do not wish to be understood as encouraging interested parties to absent themselves from judicial sales of which they have ample notice [the upset bidder did not attend the auction], the financial interest of this mortgagee [the upset bidder], and possibly other creditors, is sufficient under all the existing circumstances to justify the exercise of the court's discretion in order to avoid a possible injustice." *Id.*

While confirmation was affirmed in *Wong Shing v. M/V Mardina Trader,* 564 F.2d 1183, 1188–89 (5th Cir. 1977), we are not persuaded that the Fifth Circuit's position in that case was inconsistent with the views taken in *Ghezzi and American Tramp, supra.* In *Wong Shing* the circuit court affirmed the district court's confirmation of the sale to the highest bidder ($610,000) at the auction despite some evidence of a potential upset bid more than twice that much and of a fair market value three times greater. The circuit court noted, however,

that the appraisal was not documented, and that the testimony at the confirmation hearing concerning the possibility of an upset bid was "evasive." The evidence did not indicate, moreover, that there was a strong probability that a definite upset bid would be filed within any definite period of time. Given the lack of firm evidence that the larger bids would materialize, the court was persuaded that it was fairer to creditors to have confirmed the sale rather than to make them wait longer and take the risks attendant upon a reopening. The court stated that, although "[c]onfirmation of sale has been refused where upset bids have been filed which substantially exceed the sale price. . . . [w]here there is no certainty that a resale will produce a higher price, the court is justified in confirming the sale. To do otherwise would prejudice the lien holders who must continue to go unpaid. Refusing confirmation in such situations would also prejudice the purchaser." *Id.* at 1189.

We read these bankruptcy and admiralty cases as establishing that if there are very major disparities between the high bid at the sale and both the appraised value and upset bid, confirmation should be withheld at least where the interests of creditors do not point in a different direction. This is not to disagree with Judge Aldrich that it "would be penny wise and pound foolish" to refuse confirmation merely because a somewhat higher upset bid is received, *Gil-Bern, supra*, 526 F.2d at 629. It is important, in the ordinary case, to honor the expectations of those bidding at the sale. The likely disparity here, however, is to be measured in pounds, not pennies. Given an appraised value 200% greater than the sale price and the likelihood of an upset bid at least three times larger than the sale price (now appearing to be seven times greater), the district court exceeded its discretion in refusing even a modest extension and in confirming the sale without further inquiry.

We do not overlook appellee's argument that the Government could have protected itself by bidding at the auction, which it did attend. A similar argument was rejected in *American Tramp* where a major creditor,

who was also the upset bidder, did not bid or even attend the sale. While bidding at the auction may be the creditors' only protection in most cases of disparity in price, in cases of gross disparity the creditors are entitled to the further protection of the court, at least in the absence of any obvious impropriety on their part.

We therefore vacate the order of confirmation and remand this case to the district court for action not inconsistent herewith. Most probably such action will take the form of ordering a new sale but we refrain from giving explicit directions, since we think the district court should retain discretion to take appropriate action, not inconsistent herewith, in light of any changes in circumstances or additional facts that may be brought out.

*Vacated and remanded.*