THE UNION and others.

(*District Court, N. D. Illinois.* 1884.)

ADMIRALTY—JURISDICTION—ARBITRATION.

It is not the province of an admiralty court to investigate the conduct of arbitrators in a matter previously submitted to them, and to review their award.

In Admiralty.

*W. M. Condon,* for libelant.

*Schuyler & Kremer,* for the tug Union.

*W. L. Mitchell,* for the schooner R. B. King.

BLODGETT, J. The libelant in this case seeks, as owner of the schooner Floretta, to recover damages sustained by said schooner in a collision between said schooner, while in tow of the tug Union, and the schooner R. B. King. The collision occurred on the nineteenth of August, 1882, near the entrance to Chicago harbor. Among other defenses urged in the case is an award made by arbitrators, to whom the matters arising out of such collision was submitted by the parties interested. It appears, from the proofs and pleadings, that libelant was, at the time of the collision, owner of the Floretta. The Vessel-owners' Towing Company was owner of the tug Union, J. L. Higgie being president of the company and acting in its behalf, and J. C. Dunbar was master of the schooner R. B. King, and acted in the matter of the arbitration in behalf of her owner. The agreement for submission to arbitration was as follows:

"CHICAGO, August 24, 1882.

"Know all to whom these presents may concern, that we, the following parties, J. L. Higgie, of the Vessel-owners' Towing Company, representing the tug Union, and J. V. Taylor, representing the schooner Floretta, and Capt. J. C. Dunbar, owner of the schooner R. B. King, do hereby agree to leave to arbitrators the collision that happened between the three said vessels on the morning of the nineteenth of August, 1882, about one mile or thereabouts from Chicago harbor. We have also agreed to the following arbitrators: Capt. William Keith and Capt. William Cary, and, if they cannot agree, to be left to a third party to be appointed by them.

[Signed]                                      "J. L. HIGGIE,
                "President of the Vessel-owners' Towing Company.
                                              "J. C. DUNBAR.
                                              "J. V. TAYLOR."

And, under this agreement, the arbitrators named made an award as follows:

"CHICAGO, September 5, 1882.

"J. L. Higgie, J. V. Taylor, and J. C. Dunbar.—GENTLEMEN: We, William Keith and William Cary, do herewith give you our decision in damage case of schooner Floretta and R. B. King and tug Union. We hold schooner Floretta responsible for her own damage through action of her master, Capt. S. Murphy, for giving four different orders, and thus free tug Union from all responsibility. We hold schooner R. B. King responsible for her own damage for not keeping proper lookout.                  WILLIAM KEITH.
                                              "WILLIAM CARY."

In the fifth article of the libel, the fact that the matter was submitted to arbitration and an award made in pursuance thereof is stated, but it is also alleged that libelant had no notice of the hearing before the arbitrators, and no opportunity to present proofs; and also that libelant was induced to sign the agreement to arbitrate by misrepresentation made by Higgie, the president of the towing company; and therefore libelant is not bound by the award, and is entitled to recover upon the original cause of action. The only question I deem it necessary to consider is the effect of this submission and award as a defense in this case. I think there can be no doubt

that the agreement for arbitration in this case is sufficiently full and explicit to define the controversy and subject-matter upon which the arbitrators were to act. It gives the date and place of the collision, the vessels concerned in it, and their owners, and provides for the selection of an umpire by the two persons named as arbitrators, if they cannot agree. The award, on its face, shows that the arbitrators acted upon the matter submitted to them, and made an award fully within the powers with which they were clothed.

The rule as to the effect of an award is stated by Judge STORY in his learned work on Equity Jurisprudence, § 1452:

"It is well known that when a suit is brought at common law upon an award, no extrinsic circumstances, or matters of fact *de hors* the award, can be pleaded or given in evidence to defeat it. Thus, for example, fraud, partiality, misconduct, or mistake of the arbitrators is not admissible to defeat it. But courts of equity will, in all such cases, grant relief, and upon due proof set aside the award."

This award, being within the powers of the arbitrators, must be held final, until set aside by a direct proceeding for that purpose in a court of equity; it cannot, as it seems to me, be attacked collaterally in a case like this. The award merges the original cause of action, and extinguishes the contract or tort on which the right of action was founded. This position is fully sustained by several cases in the supreme court of Illinois, and by a large number of text-writers, which I need not take time to quote. *Eisenmeyer* v. *Salter*, 77 Ill. 515; *Haddaway* v. *Kelly*, 78 Ill. 286; Morse, Arb. 490; Story, Eq. Jur. § 1458; *Varney* v. *Brewster*, 14 N. H. 49. It is no part of the functions of a court of admiralty to correct mistakes, reform contracts, or relieve persons from contracts obtained by fraud. It follows, therefore, as a necessary conclusion, that an admiralty court, which is not a court of equity within the meaning of the constitution of the United States, is not clothed with jurisdiction to inquire into the action of these arbitrators, and set aside their award on proof outside of the submission and award itself, for any irregular action on the part of the arbitrators, or for any fraud practiced on the libelant to induce him to submit the differences in question to arbitration. The only authority which seems to support the exercise of such a power by a court of admiralty is the case of *Taber* v. *Jenny*, 1 Spr. 315. But in that case the question of jurisdiction was not raised or considered by the court, and I do not, therefore, deem it controlling or binding on other courts. In cases where a submission to arbitrators and award are palpably void upon their face, they would furnish no bar to proceeding in admiralty on the original cause of action; but it is otherwise when the award is apparently valid upon its face, and extrinsic facts must be resorted to for the purpose of avoiding it.

It is true that courts of law have in many cases set aside awards when matters pending in a suit before such courts have been submitted to arbitration, and, either by statute or by agreement of par-

ties to such submission, the award was to be made a rule of court, or basis for some future action by the court. So, too, as in the case of *The Sparkle,* 7 Ben. 528, when a contract comes before a court of admiralty in a cause of which it has jurisdiction, it will look into the equities of such contract, and not execute it if inequitable. But there the court has jurisdiction of the subject-matter, and simply looks into the equities of the parties under the contract itself, and, finding it inequitable, refuses to enforce it. But in this case the parties made a submission of their differences to arbitrators voluntarily, so far as appears upon the face of the papers, when no suit was pending, and,if by reason of any extrinsic facts the award of these arbitrators ought not to be binding, it does not come within the province of a court of admiralty to inquire into these facts and set aside the award, which it must do before it can proceed to the merits of the original controversy, the mere fact that the original cause of action was within the jurisdiction of admiralty does not clothe this court with power to act upon this contract of submission and declare it void, because its execution was obtained by the fraud of Higgie, nor to say that the award is inoperative by reason of irregularity or misconduct of the arbitrators, or by reason of their mistake or errors of judgment in the matter over which they had full jurisdiction. The controversy in this case at present is not whether the tug Union and schooner King, or either of them, are liable for the damages sustained by the Floretta, but whether the decision of these arbitrators, an independent tribunal to whom the parties submitted the controversy in regard to those damages, shall stand.

Entertaining these views, I have not examined carefully into the proof bearing on the conduct of the arbitrators in the matter of notice to the libelant, as to the time when they would hear proof and act in the case, nor as to the alleged misconduct of Mr. Higgie, by which the libelant was induced to sign the statement, nor have I examined the elaborate report of the commissioner and proofs as to who was blamable for the collision, because I consider those questions are at an end, if this court has no jurisdiction to inquire into the validity of this award and its binding effect.

The case will therefore be dismissed for want of jurisdiction, and without prejudice to the libelant's right to take such action, as he may be advised to set aside the award. In dismissing the case, however, I shall do it upon the terms that each party shall pay the costs of their own witnesses in the case, because I think this award should have been brought to the attention of the court, and the judgment of the court taken upon it, as to whether it was a bar to further proceedings upon the original cause of action, without the expense of taking the large amount of testimony which has been put into the record. Each party will be required to pay their own costs, and each pay one-third of the commissioner's costs, there being three parties to the contest.