**THE EAST HAMPTON.**

**ELECTRIC BOAT CO. v. EAST HAMPTON SHIPPING CO., Inc., et al.**

No. 307.

Circuit Court of Appeals, Second Circuit.
April 6, 1931.

George E. Hall, of New York City, for appellant.

Duncan & Mount, of New York City (Frank A. Bull, of New York City, of counsel), for appellee.

Before L. HAND, SWAN and AUGUS-TUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

On July 18, 1930, the libellant had a claim against the East Hampton Shipping Company, Inc., a New York corporation, for repairs done upon its ship, the "East Hampton," then at the wharf of the Thames Tow Boat Company in New London Harbor, where she had lain for about eleven months. The account being a year in arrears, the libellant on that day filed its libel in rem against her, and a stipulation for costs. The District Court at the same time issued a monition returnable, August fourth, under which the marshal arrested the ship, posted a notice upon her, and in the court house at New Haven, and published it in a New London paper. On August second the Thames Tow Boat Company filed an intervening libel in rem for other repairs and wharfage, and on the return day, no claimant having appeared, the District Court by interlocutory decree directed that default should be entered and that the ship should be sold, and awarded the libellants the amount which should be found due upon a reference. A venditioni exponas issued on the sixth, which was executed on the twenty-fifth, the ship being struck off to Hayes, the appellant, for two thousand dollars.

Of all this the East Hampton Shipping Company had no notice, though the decree of sale recited the contrary. Having learned of the sale after it took place but before confirmation, it intervened in the suit on September ninth, and on the thirteenth procured a rule nisi "to vacate the sale," returnable on the twenty-second. Its petition alleged that it had had no notice of any of the proceedings, that the ship was worth $25,000, that there were liens of $3,500 upon it, that the rules of the court in the admiralty had been disregarded, and that it would pay into court any amount necessary to cover the claims of both libellants.

544

Hayes, the purchaser, appeared in opposition on the return day, and submitted voluminous affidavits in answer. The matter chiefly litigated was the ship's value, the appraisals varying between $2,000, the amount of the bid, and $50,000, the highest figure of the claimant's affiants. The judge did not find what was the value of the ship, and set aside the sale, not for "the gross inadequacy" of the bid, but because of the failure to give notice to the claimant. The decree provided that the claimant should pay the amount due the libellants with costs, repay Hayes his bid together with the amount thereafter disbursed by him, and post a bond guaranteeing to bid $4,000 upon a new sale which was ordered. This decree was amended on October eighth in certain particulars, irrelevant except that among the recitals was incorporated the statement, made with the claimant's consent, that it "waived so much of the prayers of said petition as relate to the reopening of the default decree * * * and informed the court that" it "only claimed so much of the prayers of said petition as related to the setting aside of the sale." The appeal is from the decree of September thirtieth.

◼ We held in The St. Paul, 262 F. 1021, following Butterfield v. Usher, 91 U. S. 246, 23 L. Ed. 318, that a decree, vacating a sale under a decree in the admiralty and directing a new sale, was not appealable before final decree in the suit at large. That decision would apply here, and deprive us of jurisdiction, except for an allegation in the petition for the amendment of the decree of September thirtieth, that both libellants had been paid. Since this put an end to the suit, the decree vacating the sale and directing the purchaser to deliver the ship has become final. In Butterfield v. Usher this was said to have been held in Blossom v. R. R. Co., 1 Wall. 655, 17 L. Ed. 673; and in any event it is plainly the case. The only purpose of the suit was to collect the libellants' claims; these being paid, there was nothing to justify another sale, for the claimant is under no duty to give the purchaser, Hayes, a second chance to buy its ship at public auction, because the first sale has fallen through. All that can remain to be done is to ascertain whether the first sale shall stand, and whether it does or not, the case ends. Hence, though to do so we must look behind the form of the decree, in fact we can assume jurisdiction over the appeal.

◼ We may therefore proceed to the merits. Rule five of the Admiralty Rules of the District of Connecticut provides that, "except by consent of the parties or by order of the Court," there shall be no sale of the res by interlocutory decree "before the sum chargeable thereon is fixed by the Court." "By order of the Court" means something more than the decree itself, though separate orders are of course not necessary. The rule contemplates some special occasion and here there was none. The ship had already lain at her berth for nearly a year; it was summer; the wharfage was not high. There was not the slightest reason to sell her before final decree, when the claimant would have been entitled under local admiralty rule twenty-eight to actual notice, if that were feasible. This would have given it the opportunity to protect its property, which perhaps the court supposed it had already had in fact, because of the false recital of actual notice. Admiralty Rule 12 of the Supreme Court (28 US CA § 723) provides for the sale of a ship when the owner "unreasonably neglects" to give a stipulation, "upon due cause shown"; it presupposes that there shall not otherwise be any sale, except as Rule 11 (28 USCA § 723) may require, that is, if the keep be unreasonably high.

◼ It was therefore contrary to law to sell the ship when she was sold, and a wrong to the claimant, which this very contest shows to have had substance. As between the libellants and itself there can be no question of its right to reopen, and the only question is how far the court should recognize the owner's interest against the bidder's in his bid. Though his position changes upon confirmation, until then a bidder is not a purchaser, but merely an offerer to the court, which accepts his bid only by the confirming order. Camden v. Mayhew, 129 U. S. 73, 82, 9 S. Ct. 246, 32 L. Ed. 608; State of Tennessee v. Quintard, 80 F. 829, 835 (C. C. A. 6). It is quite true that a court will not refuse to confirm a bid merely because higher bids are in sight, but this we conceive is not because the unconfirmed bidder has any vested right in the property. It is rather because such a practice, if made general, would tend to keep bidders away and chill the auction. Since, therefore, bids must be confirmed as well in the admiralty as in equity (The New Hampshire, Fed. Cas. No. 10160; The Sue [D. C.] 137 F. 133), we are to consider here, not so much the bidder's interest, as whether it would be undesirable to allow such circumstances as these to interfere with the finality of judicial sales.

We agree that it would be difficult on these affidavits positively to conclude that the bid was so low as to "shock the conscience of the court," which would alone be enough. Graffam v. Burgess, 117 U. S. 180, 191, 192, 6 S. Ct. 686, 29 L. Ed. 839; Pewabic Mining Co. v. Mason, 145 U. S. 349, 367, 12 S. Ct. 887, 36 L. Ed. 732; Magann v. Segal, 92 F. 252, 259 (C. C. A. 6). Any appraisal, in the face of so much unwinnowed testimony, would be little more than a guess. We might perhaps say with some confidence that the ship was worth twice or three times the bid, but that would hardly serve. The inadequacy of the bid is not however the only reason which courts accept; in Magann v. Segal, supra, the negligence of other bidders to come prepared with the necessary cheques was thought enough. Inevitably some doubt is thrown upon all sales by accepting any excuse whatever, and the situation is the familiar one of balancing conflicting interests; but it seems to us enough that the owner has had no notice. Ordinarily, the prescribed procedure will not be ignored, so that such occasions will not often arise; when they do, the bidding has taken place without the bidder most interested to protect the property; it is in general regarded as of prime importance that a man should not lose his property without a hearing. Against these considerations the added uncertainty cast upon judicial sales does not appear to us a sufficient counterweight. Certainly such a situation justified the exercise of the judge's discretion to refuse confirmation.

The recital incorporated in the decree by the amendment is not material. Its purpose was clearly to allow the decree to stand, but not to forego any objection to the sale. The failure to give notice might indeed have even justified vacating the decree, had the claimant chosen to assert it; but it went further than that. It also vitiated the sale by keeping the claimant away, a grievance which the stipulation did not affect, but specifically reserved.

The decree is modified and the cause remanded with instructions to require the claimant as a condition upon retaking the ship to pay the marshal's costs up to September 30, 1930; to restore to Hayes the amount of his bid and his outlay upon the ship, to be ascertained, together with interest upon both up to September 30, 1930; to allow the claimant thereupon to retake the ship; and to dismiss the libel. The costs of this appeal will rest upon the appellant.