United States Court of Appeals,

Fifth Circuit.

No. 96-30064.

LATVIAN SHIPPING COMPANY;  Naviomar S A de CV;  Cerescorp Incorporated;  Ceres Gulf Incorporated, Plaintiffs-Appellees,

and

F & S International, Inc.;  Crescent Towing & Salvage Company, Inc.;  Cooper/T Smith Stevedoring Company, Inc.;  Vitalij Balashov, Intervenor Plaintiffs-Appellees,

v.

BALTIC SHIPPING COMPANY, Defendant-Appellee,

v.

ARE SHIPPING LIMITED;  Movant-Appellant.

NAVIOMAR S A de CV, Plaintiff,

v.

BALTIC SHIPPING COMPANY, in personam, et al., Defendants,

Baltic Shipping Company, in personam, Defendant.

CERES GULF INC., et al., Plaintiffs,

v.

The M/V SVERDLOVSK, INC., rem, et al., Defendants.

Baltic Shipping Company, et al., Plaintiff.

1

ST. JAMES STEVEDORING CO., Plaintiff,

v.

F & S INTERNATIONAL, INC., et al., Defendants.

Nov. 13, 1996.

Appeal from the United States District Court for the Middle District of Louisiana.

Before WISDOM, JONES and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Appellant ARE Shipping Limited (ARE) appeals the district court's order denying confirmation of the original judicial sale of the M/V SVERDLOVSK (the vessel). The district court denied confirmation of the sale and ordered a resale, stating as its reason the inadequacy of the sale price as compared to the third party claims. At issue is (1) whether the district court abused its discretion by failing to apply the proper standard in denying confirmation of the original sale and (2) whether the sale price of $3.7 million was so "grossly inadequate" as to "shock the conscience," thereby justifying denial of confirmation. Concluding that the district court failed to apply the proper standard and finding that the $3.7 million sale price is not so grossly inadequate as to shock the conscience, we reverse the district court's denial of confirmation of the original sale, and remand for confirmation of the sale to ARE for $3.7 million.

I.

FACTS AND PROCEEDINGS

The uncontroverted facts are as follows: The vessel M/V SVERDLOVSK was owned and operated by the debtor, Baltic Shipping

2

Company (Baltic). It was seized by Plaintiff-Appellee Latvian Shipping Company (Latvian) under a writ of foreign attachment.[1] The district court ordered the vessel sold at public auction, and notice of the sale was duly published. Prior to the auction, bidders were not allowed to inspect the vessel completely: None of the ballast tanks could be opened or inspected, and the cargo hatches, cargo gear, ballast system, and main propulsion system could not be opened for inspection or demonstrated to be at all operational. During the course of the bidding, there were fifty-one overbids from five different registered bidders. When bidding ceased, the U.S. Marshal adjudicated the vessel to ARE, the highest bidder, for $3,700,000.00.

After the auction, four parties—Baltic, St. James Stevedoring, Inc. (St. James), Vulcano Shipping Ltd. (Vulcano), and Sedgwick Marine & Cargo Ltd. (Sedgwick), none of which had bid at the auction—filed objections to confirmation of the sale, alleging the inadequacy of ARE's bid. Only Vulcano offered an upset bid,[2] and it was for $4,700,000.00.

ARE timely filed a motion to confirm the sale, and one day later the district court denied ARE's motion and ordered that a new

---

[1]Baltic has numerous creditors, many of whom intervened. A majority of the claims asserted do not arise out of maritime liens against the vessel but are directed against Baltic and its assets.

[2]An upset bid is a bid filed following the first judicial sale and exceeding the highest bid offered at that sale. Usually the upset bid is filed before the hearing to confirm the sale. *Munro Drydock, Inc. v. M/V HERON,* 467 F.Supp. 513, 514 n. 2 (D.Mass.1979).

3

auction be held ten days hence.  ARE timely filed a notice of appeal before the second auction.  Four registered bidders, including ARE, participated in the second auction, overbidding one another twenty-six times before ARE was again adjudicated the vessel as the highest bidder, this time for $5,250,000.00.  Shortly thereafter, ARE timely filed a motion to confirm the second sale, but with full reservation of its rights to appeal the district court's earlier order that had denied confirmation of the first sale.  Within days, the district court confirmed the second sale, reserving to ARE its rights to appeal.

## II.

## ANALYSIS

### A. STANDARD OF REVIEW

We review the district court's refusal to confirm the sale of the vessel for an abuse of discretion.[3]  We will not find an abuse of discretion unless the district court's factual findings are clearly erroneous or incorrect legal standards were applied.[4]

### B. DID THE DISTRICT COURT APPLY THE CORRECT STANDARD?

Until confirmation, an auction sale in admiralty may be set

---

[3]*Puget Sound Production Credit Assn. v. Oil Screw Johnny A,* 819 F.2d 242, 244 (9th Cir.1987); *Ghezzi v. Foss Launch & Tug Co.,* 321 F.2d 421, 425 (9th Cir.1963). *See also First National Bank v. M/V LIGHTNING POWER,* 776 F.2d 1258, 1261 (5th Cir.1985) ("Upon being petitioned to confirm the sale, the district court has discretion to decide whether or not the bid was egregiously inadequate....")

[4]*Puget Sound,* 819 F.2d at 244 (citing *SEC v. Carter Hawley Hale Stores, Inc.,* 760 F.2d 945, 947 (9th Cir.1985)); *McGary v. Scott,* 27 F.3d 181, 183 (5th Cir.1994) ("A court abuses its discretion when it bases its decision on an erroneous legal conclusion or on a clearly erroneous finding of fact.").

aside at any time, but extreme caution should be used in such actions.[5] The grounds recognized as justifying setting aside such a sale include fraud, collusion, and gross inadequacy of price.[6] Absent fraud or collusion, the highest bid at a judicial sale should not ordinarily be rejected, yet the court does have power to do so if the price is so grossly inadequate as to shock the conscience.[7] We have adopted by analogy the gross inadequacy standard applied in the context of bankruptcy sales:

> [G]ross inadequacy is said to exist when—apart from situations involving fraud or unfairness ...—there is a substantial disparity between the *highest bid* and the *appraisal* or *fair market value,* and "there is a reasonable degree of probability that a substantially better price will be obtained by a resale.'[8]

Additionally, courts have denied confirmation when the *upset bid* substantially exceeds the *sale price.*[9] Upon being petitioned to confirm the sale, the district court has discretion to decide whether the bid was egregiously inadequate and, in so doing, should consider whether the rights of third persons would be adversely affected by confirmation.[10]

---

[5]*Wong Shing v. M/V MARDINA TRADER,* 564 F.2d 1183, 1188 (5th Cir.1977) (citing *Ghezzi v. Foss Launch & Tug Co.,* 321 F.2d 421 (9th Cir.1963)).

[6]*Wong Shing,* 564 F.2d at 1188 (citing 2 C.J.S. *Admiralty* § 247 (1972)).

[7]*LIGHTNING POWER,* 776 F.2d at 1261.

[8]*Id.* at 1261 (emphasis added) (citing 4B J. Moore & L. King, Collier on Bankruptcy ¶ 70.-98[17] at 1192 (14th ed.1978)).

[9]*Wong Shing,* 564 F.2d at 1189.

[10]*LIGHTNING POWER,* 776 F.2d at 1261.

Here the district court refused to confirm the first sale of the vessel and ordered another sale in light of the "inadequacy of the price as compared to the third-party claims against the vessel."[11] The district court made no finding that ARE's bid of $3.7 million was grossly inadequate or that a substantial disparity existed between the sale price of $3.7 million and the upset bid of $4.7 million. Of particular relevance to the district court was the increase in creditor satisfaction, to the tune of $1 million, that would occur should the $4.7 million bid materialize and be confirmed. The court expressed the belief that its duty was to guarantee enough money to satisfy more of the outstanding claims and that a sale price of $4.7 million would provide $1 million more to the creditors. The court recognized, however, that even the $4.7 million bid would not satisfy all of the outstanding claims against Baltic.

Thus the district court based its denial of confirmation solely on the satisfaction of creditors' claims rather than on a gross inadequacy of the sale price or on a substantial disparity between the sale price and the upset bid. In doing so, the court failed to apply the proper standard for denying confirmation of the sale.

C. WAS THE $3.7 MILLION SALE PRICE GROSSLY INADEQUATE?

As the district court failed to apply the correct standard in denying confirmation of the sale, we review the question of gross

---

[11]As there was no fraud or collusion in the instant case, only a finding of gross inadequacy of price would justify denial of confirmation.

inadequacy of the sale price de novo.[12] When we do, we are convinced that the $3.7 million sale price is not grossly inadequate and thus does not shock the conscience.

First, the sale price is not nearly as egregiously insufficient as those found to be grossly inadequate by other courts when denying confirmation. For example, in *First National Bank v. M/V LIGHTNING POWER*,[13] we denied confirmation of a sale of a vessel, valued at more than $500,000.00, for $5000.00—a mere 1% of the fair market value. In *Ghezzi v. Foss Launch & Tug Co.*,[14] the Ninth Circuit remanded for reconsideration of confirmation of the sale when there was evidence that the fair market value of the vessel was more than 100% greater than the sale price and that the upset bid was more than 75% greater than the sale price.

Prior decisions of this court bolster the conclusion that we reach today. In *Wong Shing v. M/V MARDINA TRADER*,[15] we upheld confirmation of a sale of a vessel for $610,000.00 even though it had been purchased for $1,533,000.00 and insured for $2,000,000.00. We found no gross inadequacy of price, as there was no reliable evidence of either fair market value or an upset bid. In *Jefferson*

---

[12]*See Delta Steamship Lines, Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 1000 (5th Cir.1984) ("[F]indings of fact by the trial court in admiralty cases are subject to the clearly erroneous rule. However, when essentially based on an incorrect legal principle ... clearly erroneous does not apply and we disregard any such possible findings.") (citations omitted).

[13]776 F.2d 1258 (5th Cir.1985).

[14]321 F.2d 421 (9th Cir.1963).

[15]564 F.2d 1183 (5th Cir.1977).

*Bank & Trust Co. v. Van Niman,*[16] we remanded to the district court, which was of the opinion that it did not have the power to set aside the sale regardless of the inadequacy of the sale price, to determine whether the $500.00 sale price was grossly inadequate as compared to the fair market value. In so doing we speculated that the vessel's fair market value was likely far in excess of $500.00, as the vessel had been given as security three years earlier for a $200,000.00 loan on which $185,000.00 was still due. If the fair market value were $200,000.00, or even $100,000.00, we noted, the sale price would have been only 0.25%, or 0.5%, respectively, of the fair market value.

In the instant case, the district court determined that the value of the vessel was unknown, given that estimated values of $8.7 and $7.0 million for the vessel were unreliable and no presale appraisal had been made. *Wong Sing* indicates that when there is no reliable evidence of the value of the vessel, the sale price cannot be found to be grossly inadequate. Even if the fair market value of the M/V SVERDLOVSK were $8.7 million, the $3.7 million sale price would represent 42.5% of the fair market value, a percentage of fair market value much greater than those represented by the sale prices in *Van Niman* (0.25% or 0.5%) and *LIGHTNING POWER* (1%).

Second, there is not a *substantial disparity* between the $3.7 million sale price and the $4.7 million upset bid. The district court itself conceded that the increase in bid from $3.7 million to $4.7 million was "proportionally ... not that big." Furthermore,

---

[16]722 F.2d 251 (5th Cir.1984).

8

the instant case is distinguishable from the cases in which there was a substantial disparity between the upset bid and the sale price, as each of those cases denied confirmation when the upset bid exceeded the sale price by more than 50%.[17]  Here, the $4.7 million upset bid is only 27% greater than the $3.7 million sale price, whereas the upset bid was 29 times greater than the sale price in *LIGHTNING POWER,* 75% greater than the sale price in *Ghezzi,* 55% greater than the sale price in *Tramp,* more than five times greater than the sale price in *Munro,* and 53% greater than the sale price in *American Tramp.*

Finally, the need to preserve the sanctity of the judicial auction process and to uphold public confidence in judicial sales further supports reversal of the district court.  The highest bidder at a fairly conducted judicial sale should be able to take advantage of a bargain and become owner of the thing adjudicated.[18] Delinquent bidders should not be allowed to lie low during the original auction and then collaterally attack the high bidder, who for the first sale had expended considerable time, effort, and resources in preparing for the auction, attending it, and devoting

---

[17]*See Munro Drydock, Inc. v. M/V HERON,* 585 F.2d 13 (1st Cir.1978) (denying confirmation when the $50,000.00 upset bid was more than five times greater than the $7,500.00 sale price);  *Tramp Oil & Marine Ltd. v. Adriatic Tankers Shipping Co.,* 914 F.Supp. 527 (S.D.Fla.1996) (denying confirmation when the upset bid was 55% higher than the sale price);  *American Tramp Shipping & Dev. Corp. v. Coal Export Corp.,* 276 F.2d 570 (4th Cir.1960) (ordering resale when the $115,000.00 upset bid was 53% greater than the $75,000.00 sale price).

[18]*See LIGHTNING POWER,* 776 F.2d at 1261 (citing *Munro Drydock, Inc. v. M/V HERON,* 585 F.2d 13, 14 (1st Cir.1978));  *Wong Shing,* 564 F.2d at 1189.

its assets to securing the bid.

### III.

### CONCLUSION

The district court's refusal to confirm the original auction sale for the wrong reasons was the kind of error that constitutes abuse of discretion and calls for plenary review on appeal. As the disparity between the high bid of $3.7 million and the proposed upset bid of $4.7 million reflected neither a gross inadequacy nor a bid so low as to shock the conscience, we must reverse the district court and remand with instructions to confirm the sale to ARE on its original high bid of $3.7 million. So ordered.

REVERSED and REMANDED with instructions.