**DYNAMIC MARINE CONSORTIUM, S.A.**

v.

**M/V LATINI, her engines, tackle, apparel, furniture etc., in ren**

**Civil Action Nos. 98–3680, 98–3739.**

United States District Court, E.D. Louisiana.

April 9, 1999.

───────────────

Daniel Alfred Tadros, Keith Edward Andrews, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for Dynamic Marine Consortium.

Richard B. Foster, Reginald R. White, III, Lemle & Kelleher, LLP, New Orleans, LA, for Unitor Ships Services, Inc.

Georges M. Legrand, Mouledoux, Bland, Legrand & Brackett, LLC, New Orleans, LA, Gerard J. Dragna, Frederick A. Miller & Associates, Metairie, LA, for Ronaldo Bayaborda, Zorayda Biay, Shiela Biay, Oriental Shipmanagement Co.

Robert Seth Reich, Reich, Meeks & Treadaway, Metairie, Mark S. Senter, Shields Mott Lund, LLP, New Orleans, LA, for Lalatini Shipping Company.

Joseph E. LeBlanc, Jr., Elizabeth S. Wheeler, King, LeBlanc & Bland, LLP, New Orleans, LA, for Esco Marine Inc.

Derek Anthony Walker, Daniel Alfred Tadros, H. Michael Bush, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, Andrew Struben deKlerk, Joseph Dwight LeBlanc, III, Robin C. Minturn, Frilot, Partridge, Kohnke & Clements, LC, New Orleans, LA, for Ensenada Shipping, Ltd.

Kevin J. LaVie, Terriberry, Carroll & Yancey, Energy Centre, New Orleans, LA, for London Steam-Ship Owners' Mutual Insurance Association Limited.

Thomas Michael Schodowski, New Orleans, LA, for C.G. Kewalramani, Dr.

George Burton Jurgens, IIII, David S. Bland, Robert J. Stefani, Jr., King, LeBlanc & Bland, LLP, New Orleans, Robert Harriss Wood, Johnson, Johnson, Barrios

& Yacoubian, New Orleans, LA, for Lamacasa Maritime and Trading.

Richard J. Dodson, David Vidrine, Kenneth H. Hooks, III, Dodson & Vidrine, Baton Rouge, LA Michael A. Colomb, William Steven Mannear, Poynter, Mannear & Colomb, Baton Rouge, LA, for Nikolaos Sofiadis, Nikolaos Kaffetakis, Reylito P Airoso, Apolinario A Loreno, Antonio Pancho, Anastasios Koumpios, Oscar S Narciso, Gabriel Pueda, Herminigildo Caspe, Cecelio L Saturos, Orlando Abatay, Kosmas Dimitriou, Vasilios Bofos, Alexandros Antonaros, Kosmas Toutountzis, Nestor Jacob, Rolando Segovia, Saturnno Ancheta, Jose Ursuua, Macario Celestino, Rodelio De Leon, Jarlou Siano.

Peter Brooks Sloss, Charles Lewis Whited, Jr., New Orleans, LA, for Ross Marine & Industrial Services, Ltd.

Steven Elias Psarellis, Steven Elias Psarellis, APLC, New Orleans, LA, for Tsakos Industrias Navales S.A.

Michelle L. Maraist, Berrigan, Litchfield, Schonekas, New Orleans, LA, Robert Seth Reich, Reich, Meeks & Treadaway, Metairie, LA, Mark S. Senter, Shields Mott Lund, LLP, New Orleans, LA, for Universal Maritime Services L.T.D.

Ashton Robert O'Dwyer, Jr., Lemle & Kelleher, LLP, New Orleans, LA, Mark Howard, Federal Way, WA, for World Vision Inc.

Ashton Robert O'Dwyer, Jr., Lemle & Kelleher, LLP, New Orleans, LA, Joseph J. Iarocci, Atlanta, GA, for Cooperative for American Relief Everywhere, Inc.

Cecil Gordon Starling, Jr., Stephanie D. Skinner, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, LA, for Sinmass Shipstores (U.S.A.) Inc., Trafalgar Oil Ltd.

Paul N. Vance, Burke & Mayer, New Orleans, LA, for Crescent Ship Service, Inc.

Richard J. Dodson, Kenneth H. Hooks, III, Dodson & Vidrine, Baton Rouge, LA, Michael A. Colomb, William Steven Mannear, Poynter, Mannear & Colomb, Baton

Rouge, LA, for Samouil Ionnidis, Abraham De Luna, Rodrigo Salonoy, Carlos Estremos, Arnel Tagalog, Jonathan Ramos, Oscar Himayaall.

**WRITTEN REASONS AND ORDERS CONFIRMING MARCH 25, 1999 INTERLOCUTORY SALE OF THE M/V LATINI AND DISMISSING THE OBJECTIONS FILED ON BEHALF OF ENSENADA SHIPPING, LTD.**

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the Objections filed on behalf of Ensenada Shipping, Ltd. to confirmation of the March 25, 1999 interlocutory sale of the M/V LATINI. The confirmation hearing and objection to the sale were set for hearing on Wednesday, April 7, 1999 at 10:00 a.m. For the reasons set forth hereinbelow the objection filed on behalf of Ensenada Shipping, Ltd. is hereby dismissed and concomitantly the March 25, 1999 sale of the M/V LATINI is hereby confirmed.

**1. BACKGROUND.**

On or about November 15, 1998, the M/V LATINI discharged a cargo of urea and then loaded a cargo of approximately 50,640 metric tons of wheat, pursuant to a voyage Charter Party between Imacasa Maritime and Trading, Ltd. ("Imacasa") and Ellington Marine, S.A., the managers for the M/V LATINI. More specifically, World Vision and the Cooperative American Relief Everywhere, Inc. a/k/a C.A.R.E., Inc. were given the cargo of wheat by the United States Government to sell on the open market in order to fund their charitable endeavors. Having sold the cargo to Al Sorat Trading Company of Cairo, Egypt, World Vision/CARE entered a charter party with Imacasa to transport the cargo to Egypt. Imacasa's shipbroker located a vessel and entered into a voyage

Charter Party for the M/V LATINI with Ellington Marine S.A. of Pireaus, Greece.

On November 18, 1998, the loading of the wheat was complete and on November 20, 1998 the LATINI was down bound on the Mississippi River, headed to sea. The trip down river was hardly uneventful—a fire in the engine room caused the vessel to lose power/steerage and the vessel was grounded.

The LATINI then underwent inspections by the U.S. Coast Guard at a temporary berth which resulted in some restrictions and her loss of class. On or about December 14, 1998, when the LATINI was again down bound on the Mississippi River en route to the requisite sea trials and other inspections which would allow her "return to class", she was arrested by Dynamic Marine Consortium, S.A.,[1] pursuant to its fuel bunkers claim in the amount of $120,946.34. The LATINI was arrested again on December 23, 1998, by its mortgage holder, ANZ Grindlays Bank, Ltd. ("ANZ Grindlays"),[2] which bank sought to foreclose on its $7 million mortgage.

ANZ Grindlays filed a motion for interlocutory sale of the vessel as quickly as possible in order to minimize the mounting custodia legis expenses and crew claims.[3] All claimants joined in ANZ Grindlays motion for interlocutory sale of the M/V LATINI. This Court granted the motion and ordered the first interlocutory sale of M/V LATINI at judicial auction by the United States Marshal to be held on January 28, 1998.

On January 25, 1999, A.L. Burbank submitted an evaluation certificate evidencing the fair market value of the LATINI to be "as is, where is, at $680,000." This Court ordered a minimum bid of $340,000.00 with respect to first auction—one-half the appraised value as is where is set forth in the A.L. Burbank survey.

On January 28, 1999, the LATINI was auctioned and the solo bid was submitted on behalf of Ensenada in the amount of $340,000.[4] Ensenada deposited 10% of the sale bid/offer and subsequently moved the Court to confirm the sale over the objections of several claimants and an upsetbidder, Esco Marine, Inc. ("ESCO").[5] Claimants, CARE and Imacasa, along with ESCO urged the Court to set aside and/or refuse to confirm the sale citing grossly inadequate price and collusion, among other things, as the basis of their objections to the confirmation of the January 28, 1999 interlocutory sale to Ensenada.

This Court denied Ensenada's Cross Motion to Confirm the January 28, 1999 Sale for reasons more than amply detailed in prior opinions and orders entered February 17, 1999 and March 5, 1999. [Rec. Doc.Nos. 63 and 82]. The Court refused

1. See, Dynamic Marine's Motion and Order that the Clerk issue warrant of arrest and seizure of the M/V LATINI entered December 15, 1998 [Rec.Doc.No. 2].

2. See, ANZ Grindlays' Motion and Order directing the Clerk to issue a warrant of arrest and seizure of the M/V LATINI entered December 22, 1998 in consolidated case numbered 98cv3680 [Rec.Doc.No. 3]

3. See, ANZ Grindlays' Motion and Order that the United States Marshal sell the M/V LATINI at auction on January 28, 1999 entered January 7, 1999 [Rec.Doc.No. 14]; and Order and Reasons directing the sale of the M/V LATINI to proceed as set on January 28, 1999 at 10:00 a.m. [Rec.Doc.No. 26].

4. See, Certificate by United States Marshal of sale of the M/V LATINI at public auction held January 28, 1999 for the amount of $340,000.00 to Ensenada Shipping–Pireaus, Greece [Rec.Doc.No. 32].

5. See, Objections by Intervenor World Vision Inc. and C.A.R.E. to confirmation of interlocutory sale entered February 2, 1999 [Rec.Doc. No. 44]; Motion of ESCO Marine, Inc. to Oppose Confirmation of Marshal's Sale entered February 2, 1999 [Rec.Doc.No. 49]; Imacasa's Motion for an Order Denying Confirmation of Marshal's Sale and for Equitable Relief entered February 5, 1999 [Rec.Doc.No. 53]; and Ensenada's Cross Motion for Sanctions and Supplemental Memoranda in Support of Confirmation of Sale [Rec.Doc.Nos. 57, 58, 59, 61, 62].

to accept Esco's upset bid and ordered a Second Interlocutory Sale.[6]

On February 23, 1999, Ensenada moved this Court for an order directing the United States Marshal to release, forthwith, the Thirty–Four Thousand and 00/100 ($34,-000.00) it deposited representing 10% of its original and only bid.[7] With leave of Court Ensenada in fact withdrew its $34,000.00 plus interest which *was* on deposit with the Marshal and which *was* securing its $340,000.00 sale bid. It is noteworthy that only after withdrawing the moneys securing its offer that Ensenada filed a Motion to Alter and Amend this Court's February 17, 1999 Order and Reasons[8] which was denied by this Court on March 5, 1999.

Another week intervened and on March 12th, 1999, Ensenada filed a "Notice of Emergency Appeal" [Rec.Doc.No. 85] citing the collateral order exception of 28 U.S.C. Section 1291 and 28 U.S.C. 1292(a)(3) appealing the following orders of this Court: (1) Memorandum Opinion and Order of February 17, 1999 denying confirmation of the January 28, 1999 interlocutory sale; (2) the March 5, 1999 Order and Reasons denying Motions to Alter and Amend its February 17, 1999 Opinion and Order; and (3) the Court's March 5, 1999 Order Directing Interlocutory Sale of Vessel at another auction to be held by the U.S. Marshal on March 25, 1999.

The Fifth Circuit Court of Appeals granted Ensenada's request for appeal on an emergency basis and set a briefing schedule ending in mid-April of 1999. Initially, the Fifth Circuit denied Ensenada's request to confirm the sale of the LATINI to Ensenada, denied its request to vacate this Court's order directing a Second Interlocutory Sale but granted its motion to expedite the appeal and stayed the second interlocutory sale set for March 25, 1999.[9] Although the Fifth Circuit initially granted Ensenada's request for a stay of the second interlocutory sale scheduled for March 25, 1999, later the very same day it vacated its stay order.

No motion was ever filed with this Court to stay the second interlocutory sale scheduled for March 25, 1999 and a substantial amount of money was expended properly advertising the second interlocutory sale which proceeded as scheduled at 10:00 a.m. on March 25, 1999. At the second interlocutory sale the vessel initially "sold" to Raj Gupta for the sum of $1,020,000.00. However, Mr. Gupta never deposited the requisite security for its offer (i.e., 10% of the sale bid/offer). The Court directed the Marshal as the applicable rules prescribe to contact the next highest bidder, in this case Dr. C.G. Kewalramani ("Dr.Kewalramani"), whose bid was only $10,000.00 less (i.e., the full sum of $1,010,000.00).[10] The Marshal advised the Court on the evening of March 25, 1999 that he had been successful in contacting Dr. Kewalramani who had returned home (i.e., out of state) following the sale but had left a telephone number where he could be reached. Dr. Kewalramani was in fact contacted by Mr. Ron Gibbs of the United States Marshal's

**6.** See, Order Directing United States Marshal to proceed with Second Interlocutory Sale the M/V LATINI on March 25, 1999 at 10:00 a.m. [Rec.Doc.No. 83]; and Amended Order Directing Interlocutory Sale of Vessel entered March 11, 1999 [Rec.Doc.No. 84].

**7.** See, Ensenada's Motion and Order Directing the United States Marshal to Release the amount of $34,000.00 plus interest to Ensenada entered February 23, 1999 [Rec.Doc.No. 73].

**8.** See, Ensenada's Motion to Alter and Amend February 17, 1999 Opinion and Order and

Motion for Expedited Hearing entered March 3, 1999 [Rec.Doc.Nos. 80 and 81]; and March 5, 1999 Order and Reasons Denying Ensenada and ANZ Grindlays respective Motions to Alter and Amend Opinion and Order [Rec.Doc.No. 82].

**9.** See, Order from the Fifth Circuit Court of Appeals entered March 19, 1999 [Rec.Doc. No. 87].

**10.** See, Marshal's Proces Verbal filed with the Court on Monday, March 30, 1999.

office late in the afternoon on Thursday, March 25, 1999. Mr. Gibbs of the U.S. Marshal's office reported to the Court that he was successful in contacting the second highest bidder. He further reported orally to this Court that Dr. Kewalramani indicated his bid was sincere and he would "overnight" *via* Federal Express a cashier's check in the full amount required (i.e., 10% of his March 25, 1999 sale bid of $1,010,000.00). This was in fact accomplished and the Marshal filed the requisite proces verbal the following working day, which was Monday, March 30, 1999.

Also, on March 30, 1999 and soon after the Marshal's Proces Verbal was filed, Ensenada tendered a deposit in the amount of $3,000.00 to the U.S. Marshal pursuant to Local Admiralty Rule 64.6(B) and filed an objection to the Confirmation to the Second Interlocutory Sale. [Rec. Doc.No. 94].

Via Minute Entry order entered April 1, 1999 [Rec.Doc.No. 99] this Court scheduled the confirmation hearing regarding the second interlocutory sale conducted by the U.S. Marshal on March 25, 1999 at which time the Court would consider the objection filed on behalf of Ensenada. The confirmation hearing contemplating the objection filed on behalf of Ensenada was scheduled for Wednesday, April 7, 1999 at 10:00. Counsel for Ensenada filed a Memorandum in Support of its Objection to Second Interlocutory Sale [Rec.Doc.No. 100]. Counsel for C.A.R.E/World Vision and counsel for intervening crew members filed memoranda in opposition to Ensenada's Objection to Confirmation of Second Interlocutory Sale. [Rec.Doc.Nos. 101 and 102].

The hearing on the objection to the confirmation of second interlocutory sale was conducted as scheduled and counsel entered their appearances on behalf of Ensenada,[11] Dr. Kewalramani, Imacasa, intervening crew members,[12] World Vision/C.A.R.E.,[13] and ANZ Grindlays Bank, following which counsel for the parties orally argued their respective positions.

## 2. CONTENTIONS OF THE PARTIES.

The contentions of Ensenada are essentially as follows: (1) this Court is without jurisdiction to confirm the second interlocutory sale to Dr. Kewalramani because issues involving the first sale are currently on appeal at the Fifth Circuit; (2) the confirmation of the sale is premature until Dr. Kewalramani pays the balance of his $1,010,000.00 sale bid on the LATINI; and (3) certain sale procedures required by the Local Rules and this Court's orders were not followed. In this vein, counsel for Ensenada argues that although the second interlocutory sale took place on Thursday, March 25, 1999, the Marshal did not file the requisite proces verbal until Monday, March 30, 1999. This Court makes mention at the outset that this was a quite unusual occurrence (i.e., that the highest bidder did not deposit the requisite earnest money by 3:00 p.m. as required and absconded the jurisdiction). When it appeared that the requisite 10% deposit from Dr. Gupta was not forthcoming (i.e., sometime between 3:00 and 4:00 p.m. on the afternoon of March 25, 1999), the second highest bidder had also departed the jurisdiction but had given the Marshal a telephone number at which he could be contacted in the event that the highest bidder failed to deposit the 10% security required. The rules explicitly provide that when this occurs the U.S. Marshal should contact the

---

11. Ensenada filed a formal memorandum in support of its objection to the confirmation of the second interlocutory sale. [Rec.Doc.No. 100].

12. The intervening crew members filed a formal memorandum in opposition to Ensenada's objection. [Rec.Doc.No. 102].

13. World Vision/C.A.R.E. filed a formal memorandum in opposition to Ensenada's objection. [Rec.Doc.No. 101].

next highest bidder. At this Court's direction and pursuant to the applicable local rule, the Marshal proceeded to and did in fact successfully contact Dr. Kewalramani sometime between 4:00 and 5:00 p.m. on March 25, 1999 and so advised the Court. Although the rules make no time provisions for the second bidder forwarding his ten percent deposit, it stands to reason that such could only be accomplished as soon as humanly practicable and that occurred in this case. Dr. Kewalramani's cashier's check was "overnighted" to the Marshal *via* federal express. Once the check cleared the Marshal prepared the requisite report, which was formally filed in the record the following Monday. The Court, was at all times, informally in contact with the Marshal and well-aware of the specifics set forth in the Marshal's proces verbal before it was actually date-time stamped by the Clerk's Office.

The various counsel representing World Vision/C.A.R.E., intervening crew members, Imacasa, and Dr. Kewalramani, argued orally and/or in formal memoranda, that Ensenada's objections should be dismissed forthwith and the second interlocutory sale confirmed for the following reasons. Assuming that Ensenada ever had any right to claim possession of the vessel and/or to stay the second interlocutory sale, such was waived, when it failed to follow F.R.A.P. Rule 8, which requires the movant to either first seek stay in the district court and/or show that moving first in the district court would be impracticable. Claimants submit that the record indicates that Ensenada did neither. In any event, claimants argue this Court's jurisdiction to proceed with the second interlocutory sale including its confirmation is implicit in the Fifth Circuit's order vacating its short-lived order staying the second interlocutory sale of the LATINI. Also, World Vision/C.A.R.E. aptly points out that Ensenada withdrew its deposit (i.e., $34,000) securing its offer to buy the LATINI for its January 28, 1999 sale bid in the amount of $340,000 soon after the February 17, 1999 opinion and order denying confirmation issued, prior to filing its Motion to Alter and Amend with this Court and long before filing its Notice of an Emergency Appeal. Also counsel for claimants point out that Ensenada did not appear at the second auction and thus, did not tender any offer or make any effort whatsoever to preserve its arguments on appeal. Finally, counsel for World Vision points out that there are only three grounds recognized in the jurisprudence for setting aside a sale, they are: (1) grossly inadequate price; (2) fraud; and (3) collusion. He further asserts that there is no contention that the Dr. Kewalramani's March 25, 1999 sale bid (offer) in the amount of $1,010,000.00 is grossly inadequate. He further argues that there is no suggestion that fraud or collusion/unfairness played any part in the context of the second interlocutory sale properly advertised pursuant to the directions of this Court and properly/fairly conducted by the Marshal on March 25, 1999.

### 3. ANALYSIS

An interlocutory sale under Rule E(9)(b) is a method of disposing of property that is subject to deterioration or decay, or that is too expensive to maintain while an action is pending. Rule E(9)(b) provides:

> (b) *Interlocutory Sales.* If property that has been attached or arrested is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expense of keeping the property is excessive or disproportionate, or if there is unreasonable delay in securing the release of property, the court, on application of any party or the marshal, or other person or organization having the warrant, may order the property or any portion thereof to be sold; and the proceeds, or so much thereof as shall be adequate to satisfy any judgment, may be ordered brought into the court to abide by the event of the action; or the court may, upon motion of the defendant or claimant, order delivery of the

property to the defendant or claimant, upon giving security in accordance with these rules.

In *First National Bank of Jefferson Parish v. M/V Lightning Power*, 776 F.2d 1258, 1260 (5th Cir.1985), Judge Rubin opined that judicial sales in admiralty are most closely analogous to judicial sales under the Bankruptcy Act of 1898.[14] He observed:

> Judicial sales made under the Bankruptcy Act of 1898 provide an appropriate analogy. Although the Bankruptcy Code of 1978 has changed the earlier procedure for the sale of a debtor's assets, admiralty foreclosure sales adhere to a procedure similar to the one followed under the Bankruptcy Act. As Collier on Bankruptcy notes, with prolific case citation, since a sale of assets subject to bankruptcy proceedings is a judicial sale, the seller is the court itself. The highest bidder has simply made an offer, which does not become a contract until it is accepted by the court. "[I]t cannot object to the denial of confirmation if the court finds that the price is unfair..." The bidder at an interlocutory sale is merely an offeror and has no rights to possession of the ship until the court's acceptance through the confirmation process.[15]

The bidder's legal status has been similarly described in other circuits[16] as follows:

> An unconfirmed bid carries with it no right in the bidder to have the sale consummated. In the words Judge Learned Hand, 'Though his position changes upon confirmation, until then a bidder is not a purchaser, but merely an offerer to the court, which accepts his

bid only by the confirming order.' *The East Hampton*, 48 F.2d 542, 544 (2nd Cir.1931). Whether to accept or reject the bidder's offer 'is within the sound discretion of the court, to be exercised with due regard to the special circumstances of the case and to the stability of judicial sales.' *The Sue*, 137 F. at 134. *Puget Sound Production Credit v. Oil Screw Johnny A.*, 819 F.2d 242, 246 (9th Cir.1987).

Citing the Second Circuit's decision in *The East Hampton*, 48 F.2d at 544, the court in the *Puget Sound* further explained that "[i]f a court, in the face of higher bids, decides to confirm the original bid, it is *not* **because the original bidder has a right to the property**, but rather because it is thought that the failure to confirm will discourage participation at judicial sales". *Puget Sound Production Credit*, 819 F.2d at 246 (emphasis added).

In oral argument counsel for Ensenada reminded the Court of its finding at the time of its denial of confirmation, to the effect that it could not say that Ensenada's bid in the amount of $340,000.00 was "grossly inadequate." This Court rather denied confirmation on the basis of collusion. The Court's reasons therefor are more than amply detailed in the prior orders of this Court entered on February 17, 1999 and March 5, 1999 respectively.

■ However, since the second interlocutory sale, as compared with the firm sale bid of Dr. Kewalramani in the full sum of $1,010,000.00, and further considering the maneuvering of certain parties which is thoroughly discussed in prior orders, the Court can now state with utter confidence that this new firm bid which is almost

---

**14.** See also, *Latvian Shipping Company v. Baltic Shipping Company*, 99 F.3d 690, 693 (5th Cir.1996) (noting that regarding judicial sales in admiralty the Fifth Circuit adopted by analogy the gross inadequacy standard applied in the context of bankruptcy sales).

**15.** *First National Bank of Jefferson*, 776 F.2d at 1260.

**16.** *Salazar v. The Atlantic Sun*, 881 F.2d 73, 81 (3rd Cir.1989) ("the bidder at a sale is merely an offeror and has no rights to possession of the ship until the court's acceptance through the confirmation process"); *Puget Sound Production Credit Assn. v. Oil Screw Johnny A.*, 819 F.2d 242, 246 (9th Cir.1987).

three times that amount of Ensenada's January 28th, 1999 offer renders the $340,000.00 offer "grossly inadequate."

Counsel for Dr. Kewalramani apprised this Court at the April 7, 1999 hearing that his pricipal stands ready, willing and able to tender the balance upon notice of the Court that it would be appropriate to do so (i.e., a ruling issued by this Court dismissing Ensenada's objection and an order confirming the second interlocutory sale to Dr. Kewalramani). In fact, counsel advised the Court that he previously attempted to deposit the balance of Dr. Kewalramani's $1,010,000.00 bid with the Marshal who refused to accept tender of the balance as premature (i.e., within the three-day window for objections to the confirmation of the second interlocutory sale).

This Court observes that in *Munro Drydock, Inc. v. M/V Heron,* 585 F.2d 13 (1st Cir.1978), 585 F.2d 13, 14 (1st Cir.1978), the court reversed a district court's confirmation of a sale for $7500 when the buyer at the sale had begun taking the vessel apart to sell as scrap and a firm offer from a party who did not attend the sale was made in the amount of $50,000. Indeed, other circuits have affirmed denial of confirmation of a bid wherein the upset bid was 50% higher by comparison with the auction bid even where the maker of the upset bid did not attend the noticed sale.[17]

■ This Court believes in light of the foregoing jurisprudence and considering that the Fifth Circuit vacated its short-lived order staying the March 25th, 1999 interlocutory sale, this Court has little, if any, room to question its jurisdiction with respect to either proceeding with the second interlocutory sale and with respect to confirming the second interlocutory sale absent proof of either a "grossly inadequate price", fraud or unfairness/collusion.

The facts and procedural background involved in the *Latvian Shipping Company v. Baltic Shipping Co.*[18] case, presented the Fifth Circuit with a golden opportunity to rule that a district court is without jurisdiction proceed with a second interlocutory sale and confirm it when: (1) confirmation of highest bid in the first auction is denied; and (2) the Court's order denying such confirmation is appealed prior to the second auction.

The facts of *Latvian Shipping* are quite similar to the procedural posture of the instant case with a few exceptions which will be discussed later in this writing. In *Latvian Shipping,* after the first auction, four parties filed objections to the confirmation of the sale. The highest bidder at $3,700,000.00 was a company called ARE. ARE filed a motion to confirm. The district court denied ARE's motion to confirm and ordered a second auction to be held ten days thereafter. Its reason for doing so was the " 'inadequacy of the price as compared to the third-party bid of $3.7 million as compared to the third party claims against the vessel.' "[19] ARE filed a notice of appeal before the second auction. ARE along with three other registered

---

17. *American Tramp Shipping and Development Corp. v. Coal Export Corp.,* 276 F.2d 570 (4th Cir.1960); *Ghezzi v. Foss Launch and Tug Company,* 321 F.2d 421 (9th Cir.1963) (wherein the percentage increase of an upset bid changed the Court of Appeals' thinking so that it remanded the case to the district court to reconsider the matter). Also, in the case of *Tramp Oil & Marine Ltd. v. Adriatic Tankers Shipping Co.,* 914 F.Supp. 527, 530 (S.D.Fla. 1996) (the district court "adhered to and illuminated prior Fifth Circuit law on the confirmation of admiralty sales" and found a $475,000 bid increase at the confirmation hearing to cover custodial expenses and sea- mens' wages and repatriation to be too low to be confirmed in light of the agreed price or upset bid of $740,000 and ordered a new sale as soon as possible).

18. *Latvian Shipping Company,* 99 F.3d 690 (5th Cir.1996).

19. *Id.* at 693. The panel consisting of Judges Wisdom, Jones and Weiner, noted that since "there was no fraud or collusion in [the *Latvian* case], only a finding of gross inadequacy of price would justify denial of confirmation." *Id.* at 693, n. 11.

bidders attended the second sale. Again, at the second auction ARE was the highest bidder but at $5,250,000.00. ARE filed a motion to confirm the second sale but with full reservation of its rights to appeal the district court's earlier order denying confirmation of the first sale.

With respect to the first auction in *Latvian*, the district court failed to make findings with respect to "gross inadequacy of price" and the Fifth Circuit reviewed the question of "gross inadequacy" *de novo*. It found that the district court's refusal to confirm the original auction sale for the wrong reason[20] was the kind of error that constituted abuse of discretion and reversed and remanded with instructions to confirm the sale to ARE on its original high bid of $3.7 million.[21]

In *Latvian Shipping*, the Fifth Circuit did not hold that the district court was without jurisdiction to proceed with the second sale and/or without jurisdiction to confirm it considering the timely filed appeal of ARE prior to the second auction. Regardless of whether the parties raise it or not, whether at the district court level or the appellate level, courts examine the issue of jurisdiction *sua sponte*. Considering the strong language set forth in the *Latvian Shipping* opinion and its thorough treatment of the quite obvious issues, including the de novo review of the law of

"gross inadequacy" which the district court completely failed to address, this Court would be surprised that any jurisdictional problem which appeared on the face of the procedural history of the case went unnoticed, much less, unmentioned.

All of this means one thing—that in this case, Ensenada's legal status is simply that it has no claim to possession of the M/V LATINI. In fact, it has precious little footing since even prior to filing its motion and order to amend or alter this Court's February 17, 1999 opinion and order, it withdrew the deposit securing its original, and only $340,000.00 offer, and failed to bid at the second auction foregoing any right to a claim against the vessel.

Ensenada conceded at the April 7th, 1999 confirmation hearing that there is no contention of any fraud, unfairness/collusion, or any price inadequacy with respect to the second interlocutory "sale" to Dr. Kewalramani. Indeed and as previously mentioned, his firm offer in the amount of $1,010,000.00 secured by the requisite deposit with the Marshal now poignantly demonstrates the gross inadequacy of Ensenada's January 28, 1999 sale bid, particularly in light of the other irregularities noted in this Court's prior findings with respect to the January 28, 1999 interlocutory sale.

**20.** The district court expressed the belief that its duty was to guarantee enough money to satisfy more of the outstanding claims and recognized that even the $4.7 upset bid would not satisfy all of the outstanding claims against Baltic. *Id.* at 693. In other words, the district court based its denial of confirmation solely on the satisfaction of creditors' claims rather than on a gross inadequacy of the sale price or a substantial disparity between the sale price and the upset bid. The Fifth Circuit held that in so doing, the district court failed to apply the proper standard for denying confirmation of the sale. *Id.*

**21.** The case at bar is unlike the *Latvian* case in certain respects that are notable. First, unlike the district court in *Latvian Shipping*, this Court did not deny confirmation on the basis of any inadequacy in the original sale bid, but instead denied confirmation on the

basis of collusion. *See,* this Court's Opinion and Order entered February 17, 1999 and Order and Reasons entered March 5, 1999 [Rec.Doc.Nos. 63 and 82]. Second, and even more to the point, unlike ARE in the *Latvian Shipping* case, Ensenada (i.e., the successful bidder at the first auction in our case) did not appear at the second auction and protect its position on appeal. This Court dares to hazard an educated guess that the result in the *Latvian Shipping* case would have been quite different [and ARE's appeal may have been moot] had ARE not appeared at the second auction and protected its position. According to the applicable law which appears uniform among the various circuits, an unconfirmed bidder is merely an offerer and not a purchaser and thus has no right to possession of the vessel.

Of grave concern to all is that fact the M/V LATINI has not appreciated one iota during the time of its arrest and is in fact deteriorating. That is why the claimants pressed for one and then another interlocutory sale in short order. As pointed out during the hearing by counsel for various claimants urging the Court to summarily dismiss Ensenada's objection, the passage of time is no claimant's friend. The Court believes that Ensenada has had every opportunity to protect any rights it may have had. Both World Vision/C.A.R.E. and the intervening crew members point out in memoranda that Ensenada both withdrew its security for the sale and failed to appear at the second interlocutory sale so as to preserve any issue it may have for appeal.

■ In any event, the law governing interlocutory sales of vessels in admiralty is quite clear—the original bidder Ensenada has no rights with respect to the vessel until its bid is confirmed. That is why the second interlocutory sale of the LATINI proceeded as scheduled by this Court.

In this particular case, Ensenada withdrew its security for its $340,000.00 sale bid and failed to bid at the second auction further obscuring any right it may have had with respect to any purchase of the vessel at issue. Considering the absence of any deposit securing its $340,000.00 offer, Ensenada's motion to alter and amend this Court's Order and Reasons entered February 17, 1999 denying confirmation of the sale simply interposed more delay which the claimant's in this case can ill-afford at this juncture of the proceedings.

■ Now turning to Ensenada's objection based upon what it perceives to be technical irregularities. More particularly, Ensenada finds fault with the fact that the second highest bidder's cashier's check was allegedly received somewhat later than the rules prescribe as well as the fact that Marshal's proces verbal references a March 25, 1999 sale and yet was filed on Monday, March 30, 1999, one and a half working days post-auction.

Perhaps the term "sale" is a misnomer in the context of judicial sales in admiralty. At the end of the day (meaning the day of March 25, 1999), all the Court had was an offer (i.e., a sale bid). There is no sale unless and until it is confirmed by the Court.

Simply stated, the circumstances surrounding the default of the highest bidder at the March 25, 1999 were hardly usual in nature. It was only very late in the afternoon on March 25, 1999 that it became apparent to the Court and the Marshal that the highest bidder's 10% deposit was not forthcoming. It cannot seriously be contested that Dr. Kewalramani posted security as soon as practicable considering that when contacted by the Marshal he was some distance from the state and it was approximately 4:00 p.m. on Thursday March 25, 1999. As to the Marshal filing the proces verbal referencing the March 25, 1995 auction, the Court considers it both accurate and timely. Dr. Kewalramani's sale bid in the amount of $1,010,000.00 was in fact made at the March 25th, 1999 judicial sale and witnessed by all in attendance, including this Court's law clerk. There is no contention that Dr. Kewalramani was not at the March 25, 1999 "sale" and/or did not make his offer during the second auction. At the close of the auction his offer was the second highest bid. It became the highest bid upon the default of the highest bidder. The fact that security was posted a day later does not vitiate the fact that Dr. Kewalramani's offer was in fact made in the context of the March 25, 1999 judicial auction. The fact that Dr. Kewalramani's 10% deposit had to be "overnighted" *via* Federal Express and the Marshal's formal advices regarding the March 25, 1999 auction was filed the Monday, March 30, 1999 is of no moment.

Finally, Ensenada's tedious argument with respect to the Marshal's proces verbal overlooks two important things. The first

is the role of the Court in admiralty. In *Cates v. United States*, 451 F.2d 411, 413 (5th Cir.1971), Chief Judge Brown discussed the role of the court acting in admiralty, and observed that:

> Over a century ago this high calling was vividly described by Justice Story. 'A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid technical rules of common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction.' *The David Pratt F.*, 7 F.Cas. 22 (D.Me 1839). And as we have more recently expressed it, 'The Chancellor is no longer fixed to the woolsack. He may stride the quarter-deck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels.'

*Id.*

Second, and as previously discussed, a bidder is not a purchaser. Therefore, although the term "sale" is employed in the context of the Marshal's proces verbal, it is simply a term of art. There is no sale at a judicial auction in admiralty unless and until the Court accepts the bid by confirming order. " '[U]ntil then a bidder is not a purchaser, but merely an offerer to the court. . . .' " *Puget Sound Production Credit Assn.*, 819 F.2d at 246 (quoting, *The East Hampton*, 48 F.2d 542, 544 (2nd Cir. 1931)).

The following considerations counsel uniformly in favor of dismissing Ensenada's objections and confirming the second interlocutory sale forthwith: (1) most importantly the swift adjudication of the rights of the claimants to any funds emanating from the interlocutory sale of the M/V LATINI; (2) considerations of the legitimacy of the properly conducted judicial sale of March 25, 1999 which occurred at some expense; (3) adjudication of the legitimate rights of the successful bidder at the second interlocutory sale, Dr. Kew-

alramani; and also (4) this Court's familiarity with the long history of delays which have plagued this case and continue to sap the possibility of recovery on behalf of any claimant at the close of this case.

The vessel's custodia legis status over the past few months, during which not one but two interlocutory sales have been conducted by the United States Marshal at this Court's direction, has precipitated substantial administrative fees. It is indeed doubtful that the "piddling" $3,000.00 deposited by Ensenada pursuant to its objection lends even the smallest measure of comfort to the claimants in this case. It is doubtful that such deposit is even sufficient to pay the custodial expenses for the LATINI for one day. Moreover, Ensenada withdrew its $34,000 deposit with the Marshal soon after learning of the Court's denial of its cross-motion to confirm the sale on February 17, 1999.

For all of the above and foregoing reasons and considering the arguments made to the Court both orally and in writing, as well as this Court's understanding of the applicable law gleaned from the submissions of the parties and its own research,

IT IS ORDERED that Ensenada's Objections to the Second Interlocutory Sale of the M/V LATINI are hereby DISMISSED.

IT IS FURTHER ORDERED that the request made on behalf of Dr. Kewalramani in open court that the second interlocutory sale be confirmed is hereby GRANTED and thus, the March 25, 1999 interlocutory sale of the LATINI to Dr. Kewalramani is hereby CONFIRMED.