WACHOVIA BANK, N.A. f/k/a
First Union National
Bank, Plaintiff,

v.

M/V SUNDOWNER, her engines, tackle, apparel, appurtenances, etc., having Official No. 1046461, in rem, and Reese Enterprises, Inc., Russell R. Reese and Glenda J. Reese, in personam, Defendants.

No. 8:03–CV–264–T27 MAP.

United States District Court,
M.D. Florida,
Tampa Division.

July 10, 2003.

---

Mark R. Hanson, Esq., Mark R. Hanson, P.A., W. Palm Beach, FL, for Plaintiff.

### ORDER

PIZZO, United States Magistrate Judge.

■ This is an action to enforce a ship's mortgage. On June 4, 2003, per an earlier order issued by the district judge entering a default judgment (doc. 30), the United States Marshal sold the M/V Sundowner at a duly noticed judicial sale for $150,000. After the Marshal issued his report (doc. 36), Wachovia objected claiming it had not received notice of the sale and the sale price was too low (doc. 31). The successful bidder, David G. Marshlack, disagreed and requested the Court confirm the sale. After an evidentiary hearing on these matters, I find the sale price was not grossly inadequate; accordingly, the sale of the vessel to Mr. Marshlack shall stand confirmed. *See* Local Admiralty Rule 7.05(r)(6).[1]

### I.

In *Wong Shing v. M/V Mardina Trader,* 564 F.2d 1183 (5th Cir.1977), the former Fifth Circuit held that in the absence of fraud or collusion, the only ground for setting aside the sale of a vessel is the gross inadequacy of price. In short, the price must be so inadequate as to be unfair. *Id.* at 1188–89.[2] Stated another way, the sale price must be so inadequate that it "shocks the conscience" of the reviewing court. *Walter Heller v. O/S Sonny V.,* 595 F.2d 968, 971 (5th Cir.1979). Gross inadequacy occurs when a substantial disparity exists between the highest bid and the appraisal or fair market value, and a reasonable degree of probability exists another sale would produce a substantially better price. *Latvian Shipping Co. v. Baltic Shipping Co.,* 99 F.3d 690, 692–93 (5th Cir.1996).

### II.

■ The M/V Sundowner is a 55′ convertible sports fisherman manufactured in 1997 by Gillman Yachts. Although Wachovia's marine surveyor estimated the vessel

---

1. Although Wachovia complains about its lack of personal notice, it cites no case law to support its position that the Marshal should have done something other than what it did here. Indeed, the Marshal followed the notice requirements imposed upon him by the Local Rules governing the judicial sale of vessels. *See* Local Admiralty Rule 7.05(q). Wachovia takes no issue with the Marshal's adherence to these requirements. Wachovia certainly was aware of the district judge's order directing the Marshal to sell the vessel and could have monitored the matter.

2. The Eleventh Circuit in an *en banc* decision, *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

to be conservatively valued at $325,000, I find this estimate too high given the current condition of the vessel, its peculiarity, and the contrasting opinions of Mr. Marshlack's expert, who appraised the craft to be worth no more than $200,000. Neither expert conducted any sea trials. Thus, neither expert assessed the actual state of the engines, though both questioned their condition and age as the engines predated the date of the vessel's construction. Indeed, Mr. Marshlack's unsuccessful effort to run the engines when he inspected the boat confirmed the experts' concerns.

As both experts noted, the fact a small, unknown builder manufactured the vessel made any valuation difficult. Not only did this diminish the craft's value but rendered any comparison to similar, but well known products, more difficult. It suffers from a host of problems as outlined by Wachovia's surveyor and as evidenced by its failure to maintain its Coast Guard certification. The loss of its certification, according to Wachovia's expert, diminished its value by 35% to 45% (which brings Wachovia's low estimate in line with the price the vessel fetched at auction). Moreover, the vessel has declined since Wachovia's February 2003 inspection. Some equipment on the vessel when Wachovia's surveyor examined the craft appears missing. Regardless, the market value of a piece of property is not the price expected to be obtained in the foreclosure context. *See Bank of America v. PENGWIN*, 175 F.3d 1109, 1119 (9th Cir.1999) (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537–38, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). As one district court explained, "the most valid measure of the fair market value of a vessel is the market value of the vessel obtained at a fairly conducted sale." *U.S. v. F/V Fortune*, 1987 A.M.C. 2351 (D.Alaska 1987). At least three parties bid on the M/V Sundowner; obviously, two prospective purchasers did not think the sports fisherman to be worth $150,000.

Although Wachovia complains about the judicial sale, it offers no persuasive evidence a new sale would produce a higher price. This, as the former Fifth Circuit commented, gives reason to confirm the sale. *Wong Shing*, 564 F.2d at 1189 ("where there is no certainty that a resale will produce a higher price, the court is justified in confirming the sale").[3] Refusing to confirm this sale, on the other hand, would prejudice Mr. Marshlack, who outbid three others. Like any other bidder at a judicial sale, he should "reasonably be allowed to believe he will receive the benefit of the bargain ..." *Wong Shing, supra*, at 1189. Otherwise, a delinquent bidder could "lie low" during the Marshal's sale and mount an after-the-fact challenge against the high bidder. Approving these tactics would unfairly disadvantage the successful auction bidder who expended considerable time, effort, and resources in preparing and securing the vessel. *Latvian Shipping Co., supra*, at 694.

**III.**

The former Fifth Circuit admonishes courts to use "extreme caution" in setting aside a sale in admiralty. *Wong Shing*, 564 F.2d at 1188. From this perspective, having considered the evidence and argument presented by the parties, I find that the sale price of $150,000 was not so gross-

---

**3.** Counsel for Wachovia contends if its representative had been present at the sale, the bank would have offered substantially more than Mr. Marshlack. Courts look askance at such offers. *See generally, Latvian Shipping Co., supra*. Besides, Wachovia has not made any such bid. Usually, an upset bid is filed before the hearing to confirm the sale. *Id.* 99 F.3d at 692 n. 2 (citing *Munro Drydock, Inc. v. M/V Heron*, 467 F.Supp. 513, 514 n. 2 (D.Mass.1979)) (upset bid is high bid filed following the first judicial sale and exceeding high bid offered at that sale).

ly inadequate as to warrant another judicial sale. *Id.* Accordingly, it is

ORDERED:

1. Plaintiff's Emergency Motion to Set Aside U.S. Marshal Sale, Objection to the Sale and Objection to the Entry of an Order Confirming the Sale (doc. 31) is DENIED.

2. David G. Marshlak's motion to confirm the sale (doc. 39) is GRANTED.

3. Pursuant to Local Admiralty Rule 7.05(r)(6), the judicial sale of the M/V Sundowner to Mr. David G. Marshlack on June 4, 2003 shall stand CONFIRMED.